LOUISIANA & TEXAS LUMBER CO. v. ALEXANDER et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 21, 1913.)

ADVERSE POSSESSION (§ 50*)—INTERRUPTION—ATTORNMENT TO ANOTHER.

Generally, continuity of possession of an adverse claimant is not broken by the attornment of his tenant to another without his knowledge or consent; but the rule does not apply when the attornment is to the owner of the property, and was obtained by him without any notice that the person in possession, who attorns, is holding under one claiming adversely to him.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 255–261; Dec. Dig. § 50.*]

Appeal from District Court, Houston County; B. H. Gardner, Judge.

Trespass to try. title by the Louisiana & Texas Lumber Company against T. J. Alexander and others. From the judgment, plaintiff appeals. Affirmed.

Nunn & Nunn, of .Crockett, for appellant. Madden & Ellis and Adams & Young, all of Crockett, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellant against the Southern Pine Lumber Company to recover the title and possession of a tract of 60 8/10 acres of land on the Pedro Miranda one-third league survey in Houston county. The defendant lumber company disclaimed as to an undivided one-half of said land, and, as to the remaining one-half, answered by plea of not guilty and pleas of limitation of three, five, and ten years. It also impleaded its vendor, the appellee T. J. Alexander, on his covenant of warranty. The defendant Alexander answered by plea of not guilty, and also adopted the answer and pleas of the lumber company. The trial of the cause in the court below with a jury resulted in a verdict and judgment in favor of the plaintiff for one-half of the land, and in favor of the defendants for the other half.

The evidence shows that plaintiff holds a regular chain of title to the land in controversy, and is entitled to recover, unless G. S. Rosser, under whom defendants claim, acquired title thereto under the ten years' statute of limitation. Upon the issue of limitation, the following facts are shown by the evidence: In September, 1895, J. E. Bean and wife conveyed the land by deed to G. S. Rosser. In the fall of that year, after his purchase of the land, Rosser opened a field thereon of about 14 acres. He began cultivating this field in 1895, and it was cultivated each and every year thereafter, either by Rosser or by tenants holding under him, until Rosser's death in 1907, except the years 1904 and 1905, during which it was used for a pasture by A. C. Compton, who held under Rosser. On July 17, 1907, M. A. Rosser, the surviving wife of G. S. Rosser, conveyed an undivided one-half of the land to appellee T. J. Alexander, and in August, 1907, Alexander conveyed this one-half interest to the appellee lumber company. G. S. Rosser rendered the land for taxes, and paid the taxes thereon for the years 1896 to 1900, inclusive, and it was rendered in his name, and the taxes thereon paid for him by his son, G. S. A. Rosser, for the years 1901 to 1907, inclusive.

G. S. Rosser never lived on the land, but had his home on an adjoining tract. It is not clear, from the evidence, that any one ever lived on this place; but, as before stated, the field thereon was cultivated by Rosser or a tenant under him each year from 1895 to 1903, inclusive. In 1904 and 1905 A. C. Compton, under an agreement with Rosser, held possession of the land and used it for a pasture for his horses. He testified that Rosser agreed that he could pasture his horses on the land if he would keep the fences up inclosing it, and that, under this agreement, he kept the fences up and used the land during said years as a pasture for his two or three head of horses. The field was cultivated in 1906 by a tenant under Rosser. After his purchase from Bean, in 1895, Rosser at all times claimed the land, and his claim was open and notorious.

Under appropriate assignments of error, appellant contends that the evidence was not sufficient to show that G. S. Rosser acquired title to the land under the ten years' statute of limitation: First, because the use of the

land, during the years 1904 and 1905, by A. C. Compton for pasturage of two or three head of horses under his agreement with Rosser to so use the land, and in consideration of such use to keep the fences on the land in repair, was not sufficient use and enjoyment of the land to meet the requirements of the ten years' statute of limitation; second, because, during the occupancy of the land by Mat Coleman, a tenant of Rosser, he executed a contract of lease of the land for the year 1900 from Mr. Durst, the agent of appellant's vendors, and thereby the adverse possession of Rosser through his said tenant was broken; third, because the adverse possession and claim of Rosser was broken by a letter written by his son, G. S. A. Rosser, to appellant's agent in 1899, acknowledging that his father had no title, and offering to purchase the place for him. None of these contentions can be sustained. The statute does not prescribe the character of the use of the land necessary to constitute adverse possession; and, when its occupancy is evidenced by improvements placed thereon, any continued visible use of the land is sufficient to constitute adverse possession to the extent of the claim, as shown by the inclosure or the deed under which the claim is asserted. Its use for pasturage is just as visible as its cultivation; and the number of animals pastured thereon is immaterial. We think it clear that, in an inclosure as small as this, the pasturage of two horses is a visible appropriation and use of the land, and meets the requirements of the statute.

The facts upon which appellant's second contention is based are as follows: Mat Coleman rented the land from G. S. Rosser for the year 1900. In December, 1899, after he had moved on the land as Rosser's tenant, Mr. Durst, the agent of appellant's vendors, who was looking after the lands of his principals and seeing that squatters were removed therefrom or acknowledged tenancy under the owners, obtained from Coleman the following instrument: "State of Texas, County of Houston. This agreement witnesseth: That I, Mat Coleman, have leased and rented from John Durst, agent for the owners, all that part of land situated on the P. Miranda one-third league grant, situated in Houston county, Texas, known as the 'G. S. Rosser place,' and being all of the land, consisting of —— acres on said grant, which was sold by John E. Bean to G. S. Rosser. I agree to protect the timber on said land, and not to use any timber, except for necessary firewood around said premises. I also agree not to use or cut any of the pine saw timber or any other timber which could be used for commercial purposes, and I acknowledge that I am holding the said place as the tenant of said John Durst, agent for the owners, and agree to deliver up possession of the same on the 1st day of December, 1900, or whenever thereafter the same may be demanded. In consideration for this lease, I agree to pay said Durst, agent, one dollar, and to protect the timber, as above stated. Witness my hand, this the 29th day of December, 1899. [Signed] M. P. Coleman."

Durst testified that he did not know that Coleman was on the land as the tenant of Rosser, but understood that the land was claimed by J. E. Bean and by Coleman; that he went to see Bean, and he renounced his claim to the land, but requested that he let Coleman occupy the place for the year 1900, and that he agreed to do this if Coleman would lease from him; and that he then saw Coleman, and procured the execution of the agreement above set out. This agreement was written by Durst.

Rosser was never informed and never learned that Coleman had repudiated his tenancy under him, and never knew anything about the agreement made by Coleman with Durst. We do not think the lease of the land by Coleman from Durst in these circumstances affected his relation to his landlord. Coleman and his possession continued to be Rosser's possession and adverse to that of the owner. The well-settled general rule is that the continuity of possession of an adverse claimant is not broken by the attornment of his tenant to another, without his knowledge or consent. 1 Cyc. 1022. We are not prepared to say that this rule should apply when the attornment is to the owner of the property, and is obtained by him without any notice that the person in possession, who makes the attornment, is holding under one claiming adversely to him.

In order to perfect his title by limitation, the adverse claimant of land must give continuous notice of his claim by a visible occupancy and appropriation of the land for the time prescribed by the statute. He must in this way keep his flag continuously flying; and while he may do this by tenant, if such tenant lowers the flag by attorning to the owner, who acts in good faith and without notice that the person in possession, who attorns to him, is the tenant of an adverse claimant, it may be that such attornment would break the continuity of the adverse claimant's possession. It would seem that in such case the owner has done all that could be required of him to protect his possession, and that the adverse claimant, who trusted his tenant to assert his claim for him, should suffer the consequences of his agent's infidelity.

We are not, however, required, upon the facts before stated, to determine this question. It is clear from these facts that Durst, who represented the owner in securing Coleman's attornment, had knowledge of facts which were sufficient to charge him with notice that Coleman was holding under Rosser. He testified that he prepared the lease which was executed by Coleman. This lease

described the land as the Rosser place, and recites that it was sold by J. E. Bean to G. S. Rosser. Knowing these facts, he will not be heard to say that he did not know that G. S. Rosser claimed the land; and it is clear that any reasonable inquiry on his part would have enabled him to ascertain that Coleman was holding under Rosser. In these circumstances, we think his procurement of Coleman's attornment, made without the knowledge of Rosser, did not affect the continuity of Rosser's adverse possession.

The evidence shows that the letter written by G. S. A. Rosser to Durst, offering to buy the land for his father, G. S. Rosser, was written without authority from the said Rosser. The writer of the letter testified that he had no authority from his father to write the letter, and that his father, when he learned some time afterwards that such a letter had been written, upbraided him for writing it, and told him that he owned the land, and would not purchase it from any one. The issue of the authority of G. S. A. Rosser to write the letter was submitted to the jury, and the verdict is amply sustained by the evidence.

What we have said disposes of all the material questions presented in appellant's brief. We have considered all of the assignments of error, and, in our opinion, none of them should be sustained. It follows that the judgment of the court below must be affirmed, and it has been so ordered.

Affirmed.