JUNG et al. v. PETERMANN et al.
(No. 5821.)

(Court of Civil Appeals of Texas. San Antonio. March 21, 1917.)

1. TRUSTS ⬯203 — ADVERSE POSSESSION — NOTICE OF HOLDING—CONVEYANCE.

Where the father died, and the mother then conveyed half of the land to each of two sons, if she in fact held the land in trust for all the children, the record of her conveyance to the other children and heirs was notice of adverse ownership and possession by the grantees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 273–276.]

2. TENANCY IN COMMON ⬯14—RIGHTS OF COTENANTS—OUSTER.

The mere act of obtaining deeds to land unaccompanied by open and notorious adverse claim would not be an ouster of cotenants.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 30–41.]

3. ADVERSE POSSESSION ⬯62(3)—COLOR OF TITLE—DEEDS—RESERVATION—EFFECT.

Where the father died, and the mother conveyed half the land to each of two sons, providing that she reserved from the land her homestead rights until her death, and also all other rights to which she was entitled, but agreed that her grantees should not be disturbed in actual possession, the reservation would not toll the running of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 329–332, 340.]

---

**4. ADVERSE POSSESSION ⟨key⟩33 — COLOR OF TITLE—EVIDENCE—ADMISSIBILITY.**

In such case the deeds to the sons were properly admitted in evidence in action of trespass to try title as a notice of claim to title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 134, 135.]

**5. HUSBAND AND WIFE ⟨key⟩273(9)—COMMUNITY PROPERTY—SALE OF PROPERTY.**

The power of the survivor of the community to sell the property to pay community debts or to reimburse for sums paid on the debts applies to the homestead as well as other property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1020.]

**6. ADVERSE POSSESSION ⟨key⟩62(3)—SUFFICIENCY OF POSSESSION.**

Where the father died, and the mother conveyed half the land to each of two sons, reserving a homestead right, but other heirs claimed an interest, to establish title by adverse possession the two sons need hold adversely only to the other heirs, and not to their mother.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 329–332, 340.]

**7. WILLS ⟨key⟩205—ADMISSIBILITY IN EVIDENCE—NECESSITY OF PROBATE.**

A purported will which was never probated is inadmissible in evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 507, 509–512, 561, 928.]

**8. EVIDENCE ⟨key⟩230(3) — ADMISSIBILITY — DOCUMENTS—WILLS.**

A purported will which apparently affected title to land was inadmissible where the land involved had been conveyed nine years before, since declarations of a grantor made after execution of conveyance not in the presence of the grantee cannot be used to impeach or limit the title conveyed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 837, 838, 846.]

**9. DEEDS ⟨key⟩97—CONSTRUCTION—LIMITATION.**

Where a deed contains full covenants of warranty, and exceptions, conditions, or reservations inconsistent therewith are made, which have a tendency to depreciate or destroy the grant, they are of no effect.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 267–273, 434–447.]

**10. WILLS ⟨key⟩88(2)—DEED OR WILL—GRANT OF PRESENT ESTATE—"WILLS."**

Instruments conveying a present interest are deeds, and not wills, and the grantor can in no way impair or destroy their effect.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 209.

For other definitions, see Words and Phrases, First and Second Series, Wills.]

Appeal from District Court, Gillespie County; Horace E. Wilson, Special Judge.

Action by Henry Jung and others against August Petermann and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Geo. Powell, of San Antonio, for appellants. A. W. Moursund, of Fredericksburg, for appellees.

FLY, C. J. This is an action of trespass to try title to an undivided interest of two-eighths in and to 280 acres of land out of original survey 49, granted to A. Oten, in Gillespie county, instituted by William Petermann, Henry Jung, Jr., August Jung, Alfred Jung, Henry Jung, Walter Jung, Otto Jung, Meta Jung, and Arthur Jung, the last-named seven being minors and orphans, who appear through Henry Jung, Sr., and Walter Bart and wife, Emma Jung Bart, against 22 defendants, who are appellees on this appeal, but, with the exception of Franz Petermann and August Petermann, are claiming nothing. Franz Petermann answered, claiming 140 acres of land, being the west half of the 280-acre tract, and disclaimed as to the other half, and pleaded limitations of three, five, and ten years and improvements in good faith. B. J. Stubbs answered claiming the east half of the 280 acres of land, and pleaded limitations and improvements in good faith. Katie Holden and Sylvia Holden, through their guardian ad litem, answered claiming two twenty-fourths of the 280 acres of land. Other defendants disclaimed all interest in the land. All of the parties claim from Franz and Caroline Petermann, the father and mother of William Petermann, Sr., some as heirs and others as vendees of Mrs. Caroline Petermann as survivor of her husband, Franz Petermann, deceased. The cause was tried by jury resulting in an instructed verdict and judgment in favor of Franz Petermann and B. J. Stubbs, defendants. The plaintiffs prosecuted this appeal.

The uncontroverted evidence showed that on February 22, 1894, Mrs. Caroline Petermann, after the death of her husband, Franz Petermann, conveyed the west one-half of the 280 acres of land to Franz Petermann and the east one-half to August Petermann. The deeds were recorded on February 23, 1894, and Franz Petermann had continuous adverse possession of his half, and August Petermann and his vendee, B. J. Stubbs, had continuous adverse possession of the other half until this suit was instituted, on November 29, 1915, a period of over 20 years.

[1] If Mrs. Caroline Petermann was holding the land in trust for her heirs, plaintiffs herein, she repudiated the trust by making the conveyances to her two sons, and the record of the deeds put appellants upon notice of such repudiation, and that Franz Petermann and August Petermann were claiming the land not as tenants in common, but in their own right. The two men paid the taxes on the respective tracts of land conveyed to them by their mother, and exercised all the rights and privileges of adverse ownership and possession. The acts of the parties in connection with the land could not have been more certain and unequivocal than those proved without contradiction.

[2] The mere obtaining deeds to the land, unaccompanied with open and notorious adverse claim to the land, would not be an ouster of the cotenants, but in this case there was an open repudiation of the rights of all others in the land, and the statute of limitations was put into operation. Towery v. Henderson, 60 Tex. 291.

When Mrs. Petermann sold the land to ap-

---

pellees, she repudiated her tenancy in common with her children, and this was followed by the adverse open and notorious claim of her vendees to the land. Dillard v. Cochran, 153 S. W. 662; Robles v. Robles, 154 S. W. 233.

In each of the deeds made by Mrs. Petermann to her sons Franz and August, immediately following the covenant of warranty, were these words:

"But it is expressly understood and stipulated, that I reserve from said land herein conveyed, my homestead rights until my death, and also such other rights as I may be entitled to, hereby agreeing that my said grantee * * * shall not be disturbed in the actual possession, cultivation and enjoyment of the premises herein conveyed, by, through or under me."

The sons had been living with their mother since the death of the father, making a living for her and paying off a number of debts of the father. She was feeble and lame. When the deed was made to Franz he fenced his 140 acres off from the balance of the land, and August lived with his mother only a short time and then built a home. They paid the taxes on their respective shares. His mother lived with August in the new home until 1895 or 1896, when she left and lived with her father six or seven years, when he died, and she then returned and lived, until her death in 1913, with her son Franz. He built her a small house in his yard adjoining his house. The old house was not occupied after August moved out. He sold to Stubbs in 1914.

[3] The reservation in the deeds was undoubtedly intended as a reservation of the right to live on the land if Mrs. Petermann so desired. A year or two after making the deeds she left the place, and did not return until after the death of her father, which occurred six or seven years after she went to live with him. She then returned, not to the old house, but to her son Franz's place, upon which he built her a small house. She exercised no control whatever over the place and permitted a division of it between her two sons. William Petermann knew of the division and knew his brothers were exercising ownership over the land. For over twenty years none of the plaintiffs claimed any interest in the land or paid any taxes on it. They knew the mother had sold it, and that her vendees were claiming it as their land and rendering it for taxation in their respective names. The moment Mrs. Petermann executed the deeds, she repudiated the trust and gave notice that she did not recognize the rights of any one else in the land, except her two sons.

[4] The homestead rights in the land, if they could be reserved when the land was conveyed, would carry with them the right of possession, right of enjoyment and control, and the right to all the revenues arising from the homestead, but in the clause seeking to retain these rights they are destroyed by the language of the reservation itself. The language, "I reserve from said land herein conveyed, my homestead rights until my death," means absolutely nothing when coupled with the stipulation that the grantees "shall not be disturbed in the actual possession, cultivation and enjoyment of the premises herein conveyed." That clause gave absolute dominion over the land to the grantees, and completely destroyed any homestead rights of Mrs. Petermann. If the grantees were to have actual possession, the right to cultivate and the right to enjoy the land, what rights could have been left for the grantor? Absolutely nothing, and the whole clause fails and is of no effect. We are of opinion that the clause seeking to reserve homestead rights is meaningless and of no force or effect whatever. The grantor never at any time attempted to enforce any homestead rights after the execution of the deeds. The deeds were properly admitted in evidence, and they were sufficient, taken with other circumstances, to notify appellants that the vendees were holding the land adversely to them and for twenty years appellants acquiesced in their right to the land. Brasher v. Taylor, 109 Ark. 281, 159 S. W. 1120; Robles v. Robles, herein cited; Eastham v. Gibbs, 58 Tex. Civ. App. 627, 125 S. W. 372; Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508.

[5] The uncontroverted evidence showed, and it is recited in the deeds to August and Franz, that they had supported their mother and had paid off community debts amounting to a large sum of money. It has been often held that the survivor of the community has the power to sell the property to pay community debts or to reimburse for sums paid on the debts. And this power applies to the homestead as well as other property. Ashe v. Yungst, 65 Tex. 631, and authorities cited therein; Wiener v. Zweib, 128 S. W. 699, affirmed 105 Tex. 262, 141 S. W. 771, 147 S. W. 867; Morgan v. Lomas, 159 S. W. 869; Pierce v. Gibson, 184 S. W. 502.

[6] In regard to the possession of the land by appellees, it was not necessary that it should be adverse to Mrs. Petermann, if it was adverse to appellants. Price v. Eardley, 34 Tex. Civ. App. 60, 77 S. W. 416; Glover v. Pfeuffer, 163 S. W. 984; Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153.

[7, 8] The purported will of Mrs. Petermann executed in November, 1903, was properly rejected. The will was never probated, and if it had been, it could have no binding force as to land conveyed by her over nine years before to her sons. She could not at that date or any other after the execution of the deeds give directions as to how one or both of them should dispose of any of the revenues arising from the land. The whole of the evidence tended to show that Mrs. Petermann never at any time after the execution of the deeds exercised the slightest

control over the land, but abandoned it and went to live with her father for seven years. The will had no probative force whatever and was properly rejected. There was no offer by appellants to show that the instrument was executed by Caroline Petermann or that her signature was appended thereto. It is well established that the declarations of a grantor made, after a conveyance is executed, not in the presence of the grantee, cannot be used to impeach or limit the title' of the estate conveyed.

[9] It is the rule that where a deed, as in this instance, contains full covenants of warranty, and exceptions, conditions, or reservations inconsistent with the interest granted by the deed are made, which have a tendency to depreciate or destroy the grant, they are of no effect. Devlin, Real Estate, § 843a.

[10] The two instruments executed to appellees by their mother were deeds, and not wills, because they conveyed a present interest, and no act of the vendor could impair or destroy their effect. Devlin, Real Estate, §§ 855a, 855b. The two instruments were warranty deeds and conveyed the full estate to the appellees. Devlin, Real Estate, § 978; Hamilton v. Jones, 32 Tex. Civ. App. 598, 75 S. W. 554.

The sixth, seventh, and eighth assignments of error are overruled. The evidence was uncontroverted that the community rights were paid by Franz Petermann and August Petermann, and adverse possession was clearly proved.

The judgment is affirmed.