**POWELL LUMBER CO. v. NOBLES et al.**

**No. 2130.**

Court of Civil Appeals of Texas. Beaumont.

Dec. 19, 1931.

Rehearing Denied Dec. 31, 1931.

W. E. Lea and O. L. Baker, both of Orange, for appellant.

Dies, Stephenson & Dies, of Orange, for appellees.

WALKER, J.

This was a suit in trespass to try title by appellant, Powell Lumber Company, against appellees, J. C. Nobles and W. N. Green, involving a tract of 182 acres of land on the Charles Morgan League in Orange county. Each of the appellees answered by pleas of not guilty and the several statutes of limitations, claiming an undivided interest of 160 acres in the tract of land sued for. On trial to the court without a jury, judgment was entered in favor of appellee W. N. Green for an undivided interest of 160 acres. The appeal is by Powell Lumber Company.

The facts in the case are as follows. Appellant owned the record title, holding under W. J. Duhig, who owned the land prior to 1911 and for many years subsequent thereto, in fact, during Green's limitation period. On or about the month of March, 1911, appellee W. N. Green purchased from Tom and Carroll Teal certain live stock and their right of possession to certain improvements situated on the land in controversy. These improvements consisted of a small dwelling house and the fences surrounding the same. The Teals were on the land as tenants at will of Duhig, the owner. Immediately after purchasing from the Teals and during the same month, Green contracted with appellee Nobles to move upon this land and to occupy the house, take care of the improvements, and to cultivate the cleared land as his tenant. Under this contract Nobles immediately moved upon the land and took possession of all the improvements as tenant of Green. To quote from the trial court's conclusions of fact: "During the following year the said Green, through the said Nobles, as tenant, enlarged the possession of the said Green by building new fences and clearing land; and enclosed in all something like twenty-five acres of land, which included the improvements hereinbefore mentioned; that the tenant was assisted by the said Green, as landlord, in making the crop which was cultivated upon the land enclosed during the year 1911."

On November 1, 1912, W. J. Duhig, the owner of the land, entered into the following tenancy contract with J. D. Nobles:

"To Whom it may Concern:

"This is a permit for ——— Green and J. D. Nobles to enter on and take possession of

a portion of the Mrs. Parish tract of land, in the Morgan League, known as Morgans Bluff. They are at liberty to fence and cultivate all the land they need without cutting or destroying any of the standing timber. In case I wish them to vacate they agree to do by being given sufficient time to move their crops.

"The above permit given in consideration of $5.00 to me in hand paid by —— Green, and J. D. Nobles, receipt of which I hereby acknowledge.

"Witnesses:

"————

"————

W. J. Duhig

J. D. Nobles"

The court found the following facts explaining the circumstances under which this contract was made:

"At the time said agreement was executed the said W. J. Duhig had knowledge that the said W. N. Green was interested in the land described in said agreement and that J. D. Nobles was occupying said land as the tenant of W. N. Green, as aforesaid.

"I further find that the said W. N. Green did not sign said agreement or have anything to do with reference to the same; that the said J. D. Nobles signed said agreement without the knowledge or consent of the said W. N. Green and that the said W. N. Green was not informed at any time in reference thereto; the said W. J. Duhig had notice and knowledge of the fact that the relation of landlord and tenant existed between W. N. Green and J. D. Nobles at the time said agreement was made.

"I further find that the defendant W. N. Green took possession of the land claimed by him herein through his tenant J. D. Nobles about the month of March, 1911 and that the latter together with his family have lived upon said land since said date."

Nobles was in possession of the improvements on this land from March, 1911, to 1926, cultivating, using, and enjoying the same each and every year. During all this time Green and Nobles mutually understood that Nobles was Green's tenant and that Nobles was in possession for Green and through him Green was asserting a claim of right to an undivided interest of 160 acres in the tract of 182 acres, including all improvements on the land, and through his tenant Nobles it was the purpose of Green, from the date Nobles took possession of the Teal improvements, to claim the undivided interest of 160 acres adversely to Duhig. As further explaining the execution of the tenancy contract by Nobles to Duhig, we quote as follows from the testimony of Nobles:

"When Mr. Green made arrangements with me to live on that property, I was supposed to give him part of the crop. I know that property Mr. Green was claiming down there; he was claiming 160 acres. Certainly I have been living there and had possession of that property for him since then. Sure I have occupied, used and enjoyed that property, and I have cultivated it continuously and been in open possession of it.

"Q. State whether or not about November 1st 1912 you had a conversation with Mr. W. J. Duhig? A. Well, yes—not with him. I had a conversation with Mr. Cunningham, who submitted some kind of an instrument to me to be signed. I guess this is the instrument which you now show me. I think I signed it, yes sir.

"At the time I talked to Mr. Cunningham something was said about Mr. Green; I told him I was on the place there for Mr. Green— on his place, for him. Yes, I told Mr. Cunningham that I was on the place for Mr. Green.

"* * * I don't know whether that was signed by Mr. W. J. Duhig. I don't know whether he signed it or not. Yes, I informed him about my connection with Green at the time I signed this.

"Q. Did he state what he was going to do in reference to Green? A. No, he never said anything about it.

"Counsel for Plaintiff objected, which objection was sustained by the court, and the defendant excepted.

"* * * Mr. Green moved me on that place as his tenant. I am not claiming an undivided 160 acres up there also; you are mistaken. I was staying there for Mr. Green. I don't figure in that 160 acres he is claiming.

"* * * I was out there for Mr. Green and not for J. D. Nobles. I never did pay any taxes on the land, no sir.

"* * * I wasn't acting as agent for Mr. Green; I can't say I was acting as his agent for him—I was there as a tenant.

"When you ask what made me sign that instrument that has been introduced in evidence, well, I supposed Mr. Green would sign it; I told Mr. Cunningham I would sign it. Mr. Cunningham was a man that was logging for Mr. Duhig—a contractor. I can't tell you if he was looking after Mr. Duhig's interest up there or not. I suppose Mr. Duhig did own some land around there; Mr. Cunningham was logging there. I suppose since that time Mr. Duhig has laid claim to the identical property that I have been living on; I don't know. No, I don't understand as a matter of fact that he has done so.

"* * * When you ask me why I didn't get away from there, well, Mr. Green didn't tell me to get off, so I didn't. When you say you are talking about Mr. Duhig, well, I didn't get the land from Mr. Duhig; I got it from Mr. Green. Yes, I told Mr. Duhig that the reason I wouldn't get off was because I was a tenant of Green, and was claiming 160 acres for him."

■ On the facts stated the trial court concluded that "the possession of the said Green through his said tenant was open, peaceable, continuous, adverse and hostile." We believe these issues were raised by the evidence and, therefore, the trial court's conclusions must be sustained.

■■ As Nobles took possession of the land as a tenant of Green, and when he signed the tenancy contract told Duhig's agent that he was in possession for Green and holding the land for him, his attornment to Duhig did not break the continuity of Green's possession, provided at that time Green was in hostile possession. In Louisiana & Texas Lumber Co. v. Alexander (Tex. Civ. App.) 154 S. W. 233, Judge Pleasants said that the well-settled general rule is that the continuity of possession of an adverse claimant is not broken by the attornment of his tenant to another without his knowledge or consent. Though in that case Judge Pleasants suggested that this rule might not control when the attornment was made to the true owner, yet he gave the rule controlling effect because in that case the evidence raised the issue that the true owner knew that the tenant was in possession for the limitation claimant. That issue was raised in this case, that is to say, Nobles testified that he told Duhig's agent at the time he signed the tenancy contract that he was holding the land for Green, and the judgment in favor of Green necessarily imports that this issue was found in his favor. The following additional authorities also sustain this proposition: Combs v. Stringer (Tex. Civ. App.) 142 S. W. 668; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Saxton v. Corbett (Tex. Civ. App.) 122 S. W. 75; Shaw v. Thompson Bros. Lumber Co. (Tex. Civ. App.) 177 S. W. 574; Lockin v. Johnson (Tex. Civ. App.) 202 S. W. 168; Temple Lumber Co. v. Pulliam (Tex. Civ. App.) 272 S. W. 587.

■ The main question is whether or not at the time Nobles executed his tenancy contract under Duhig his possession was of a nature to put Duhig on notice that Green was claiming the land as his own. It is the law that when Green took possession of the land under the Teals, Duhig's tenants, his possession was not hostile to Duhig but was of the nature of a tenancy at will. West Lumber Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828, 830. To convert his tenancy into an adverse holding it was necessary that Green repudiate his tenancy in such way as to give Duhig actual or constructive notice of his hostile intent. Wilson v. Beck (Tex. Civ. App.) 286 S. W. 315, 321; Hardcastle v. Fitzgerald (Tex. Civ. App.) 27 S.W.(2d) 302; Lobit v. Dolen (Tex. Civ. App.) 231 S. W. 831. We think the acts of dominion over this land exercised by Green through his tenant Nobles were sufficient to raise the issue against Duhig that Green was in adverse possession of his land. These acts of dominion are fully recited in the statement of the case above made.

■ Appellant attempted to restrict Green to his actual inclosures by showing that Duhig entered upon the land during Green's period of limitation. By giving full scope to all testimony on this issue, no entry by Duhig was shown from 1914 to 1925. The period of time between these two dates covered the full limitation period of ten years.

■ After the trial judge had made and filed his conclusions of fact in response to appellant's motion, appellant filed certain exceptions thereto on the ground that no findings were made on certain material issues, but failed to call these exceptions to the attention of the trial judge. This omission was fatal to the assignment of error raising this point. Gulf, C. & S. F. Railway Co. v. Fossett, 66 Tex. 338, 1 S. W. 259; Holmes v. Thomason, 25 Tex. Civ. App. 389, 61 S. W. 504; Dallas Tailors' Supply Co. v. Goen, 25 S.W.(2d) 224.

■ Appellant also complains that the court erred in striking out a sheriff's deed and after the testimony had closed in refusing to permit it to offer the order of sale and sheriff's return in support of this deed. This assignment is overruled because no statement is made showing the materiality of this deed and the statement made fails to show that the trial court abused its discretion in the ruling complained of.

■ When this suit was first filed, appellee Nobles was made defendant. He answered on the 30th of April, 1929, by pleas of not guilty and the several pleas of limitations. On September 16, 1930, appellant filed an amended petition making appellee Green a party defendant. The amended petition was filed six days before the convening of the term of court, at which this case was tried. On the 22d day of September, 1930, the first day of court, Green filed an answer by the same attorneys who represented Nobles, adopting Nobles' answer and cross-action. The case went to trial on October 7, 1930. On the trial, as appears from the statement made above, Nobles testified in behalf of Green, wholly abandoning and repudiating any claim by him to the land. On motion for new trial appellant "set up the surprise resulting from Nobles' change of front and the misapprehension under which appellant went to trial." This ground of the motion for new trial was properly overruled by the court. The dates, as recited, clearly show that appellant was fully advised of Green's contention in time to prepare its defense to his pleas of limitation. Also, it should be said that if appellant was surprised at Green's answer, it should have filed a motion for continuance on that ground, which it did not do.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.