AUBREY DAVIS ET AL V. MAGNOLIA PETROLEUM COMPANY ET AL.

No. 7301. Decided January 3, 1940.
(134 S. W., 2d Series, 1042.)

*C. E. Bryson,* of Houston, *King, Mahaffey & Wheeler,* of Texarkana, and *W. C. Hancock* and *Edwin M. Fulton,* of Gilmer, for plaintiffs in error.

The proof showing that Mrs. Davis together with several of her children signed, after the death of Mr. Davis, a deed to the land in controversy, it cannot be said that she signed same as community survivor of the estate of herself and deceased husband, or that by signing the same she conveyed more than her undivided one-half interest therein. Mariposa Land & Cattle Co. v. Silliman, 87 Texas 142, 26 S. W. 978; Kimbro v. Hamilton, 28 Texas 560; Fisk v. Flores, 43 Texas 340.

*Carroll E. Florence,* of Gilmer, *Lewis Rogers* and *Bruce Billingsley,* of Houston, *Wynne & Wynne,* of Longview, *Sam Williams,* of Mt. Pleasant, *W. H. Francis* and *Roy C. Ledbetter,* both of Dallas, and *Carl Runge* and *H. A. Berry,* both of Houston, representing Federal Land Bank, for the defendants in error.

The surviving wife has the power to sell the community homestead to reimburse herself for funds advanced from her separate estate to pay off existing vendor's liens against the homestead, and such authority does not expire at the end of four years but continues so long as the debts are unpaid or until suspended by remarriage in case of the surviving wife. Snell v. Knowles, 87 S. W. (2d) 871; Reed v. Brewer, 90 Texas 144, 37 S. W. 418; 3 Tex. Jur. 1006.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Plaintiffs in error, the children and grandchildren of C.M. Davis, deceased, as plaintiffs in the trial court, brought this suit to try title against the following designated defendants: the fee owner of the land involved, the holder of a leasehold interest and other holders of mineral rights in the land, and the Federal Land Bank of Houston as holder of certain notes secured by deed of trust on the land, all of whom are defendants in error here. The jury was discharged by agreement of the parties after the evidence was introduced. The court thereupon as trier of the facts as well as the law, rendered judgment that

plaintiffs take nothing and that defendants go hence without day. The Court of Civil Appeals affirmed the judgment. 105 S. W. (2d) 695.

C. M. Davis, a widower, and his second wife, M. A. Davis, purchased the land in question from N. W. Grau and wife in August, 1919, during coverture of Davis and his wife, for the consideration of the execution and delivery by Davis of two vendor's lien notes for $540.00 and $749.00, respectively, and the further consideration of his assuming payment of two other vendor's lien notes then outstanding against the land for $580.00 each, due January 1, 1920, and January 1, 1921, respectively, the notes executed and those assumed carrying the same maturity dates.

The property in question was the homestead of Mr. Davis and his wife. Davis died intestate June 3, 1920, survived by his wife and three of their children, Ed, Aubrey and O. M. Davis, and J. L. Davis, a stepson of the wife. There were other children whom it is unnecessary to mention. The above described notes were outstanding against the land at the time of his death, which occurred some nine months after the land was purchased. Mrs. Davis and some of the children continued to occupy it as their rural homestead until November 27, 1924, at which time Mrs. Davis by warranty deed joined in by her stepson and the three children above named, conveyed the land to the First National Bank of Gilmer.

The deed recites among other things that "We, Mrs. M. A. Davis, surviving wife of C. M. Davis, deceased, a feme sole," for and in consideration of the sum stated in the deed, "have granted, sold and conveyed" to the First National Bank of Gilmer, Texas, the property in question, describing it. The deed is signed and acknowledged by Mrs. Davis, J. L. Davis, the stepson, and Mrs. Davis' three children named above.

The consideration recited in the deed is $1450.00, paid by the bank as follows:

"$167.00 cash, * * * and the cancellation * * * of one * * * note due the bank * * * executed by Mrs. M. A. Davis and son, Ed Davis, for $450.00, also the * * * cancellation of a * * * note due J. W. Wall signed by Mrs. * * * Davis for * * * $550.00, and also the settlement and * * * cancellation of a * * * note due Roberts & Oliver, signed by Mrs. * * * Davis for * * * $175.00, also the assumption of the taxes due on said land for the years 1923 and 1924, amounting to $108.00."

Immediately following the quoted recitation is the further recitation which reads:

"Said above described indebtedness is community indebtedness created by C. M. Davis and Mrs. M. A. Davis during their married relation, except the note due Roberts & Oliver, said amount * * * (being) due for the burial expenses of C. M. Davis, the deceased husband of Mrs. M. A. Davis."

After the sale of the land to the bank Mrs. Davis and the children then living with her moved away. The bank sold it to Burnett Burns, who in turn, on January 14, 1925, conveyed it to M. C. Bell, retaining one-half of the oil, gas and mineral rights. On January 25, 1929, Bell executed a deed of trust in favor of the Federal Land Bank, and Bell and Burns executed various mineral conveyances to others who are defendants in error here or their grantors.

The sale it will be noted was made more than four years after the death of C. M. Davis. There was no administration on his estate. Mrs. Davis did not marry again and did not qualify as survivor. No question of bad faith on her part, or of anyone else connected with the sale, is presented or involved.

Plaintiffs seek to recover title to the respective interests claimed by them in the land and to cancel the notes held by the Federal Land Bank, upon the grounds indicated by the four following propositions: first, that by the deed above described Mrs. Davis did not exercise her power as community survivor, and that it was effective to convey only her one-half community interest, and J. L. Davis' one-twelfth interest in the land; second, that upon the death of C. M. Davis his community interest was inherited by his children and grandchildren subject to the homestead rights of his widow and minor children, and that Mrs. Davis, without qualifying as survivor of the community, was without power to convey the community interest thus inherited to pay community debts that were not liens upon the homestead; third, that Mrs. Davis, since she did not qualify as community survivor under the statute within four years time after her husband's decease, and since there was no regular administration on the estate during such time, lost the power as survivor to sell the children's homestead interest in the community to pay community debts, especially those not secured by a lien on the homestead; and fourth, that defendants failed to discharge the burden upon them to establish that Mrs. Davis sold the land to pay community debts existing at the very time the land was sold.

Among the contentions presented here by plaintiffs as incidental to those made in support of the foregoing propositions, is one that will be disposed of preliminary to a discussion

of the alleged errors of the Court of Civil Appeals. It is that the unqualified surviving wife in making sale of the community homestead to pay community debts does not have the same broad powers for this purpose as does the unqualified surviving husband. While admitting the surviving husband has power to sell the homestead to pay ordinary community debts (Stone v. Jackson, 109 Texas, 385, 210 S. W. 953) they question the power of the surviving wife to do so.

■ Such power on the part of the surviving wife was recognized by this Court in Ladd v. Farrar, 17 S. W. 55, in which it is held that the surviving wife has such power. Other cases so holding in which writs of error were refused by this Court are: Crawford v. Gibson, 203 S. W. 375; Hames v. Stroud, 51 Texas Civ. App. 562, 112 S. W. 775; Henry v. Vaughn, 46 Texas Civ. App. 531, 103 S. W. 192; Jennings v. Borton, 44 Texas Civ. App. 280, 98 S. W. 445 and Jung v. Petermann, 194 S. W. 202. No such distinction as that insisted upon by plaintiffs has been established by our decisions, and the Court is not disposed to create such a distinction at this time. The contention is overruled.

■ The Court of Civil Appeals held that Mrs. Davis in executing the deed to the bank exercised her power as community survivor and that it was effective to convey the entire interest in the property. Writ of error was granted upon the assignment complaining of this holding, but upon further consideration in the light of the subsequent action of this Court upon an assignment predicated upon a similar contention made by plaintiff in error in Griffin et al v. Stanolind Oil & Gas Company, 133 Texas 45, 125 S. W. (2d) 545, 6 TSCR 345, we have concluded that the holding of the Court of Civil Appeals upon this point is correct.

■ Such a conveyance by a grantor having power to convey as community survivor, "passes title commensurate with the power," notwithstanding he does not specify in the instrument of conveyance that he is acting under the power. It was immaterial whether Mrs. Davis, in making the conveyance, acted in her own name simply or in her name as survivor. Griffin et al v. Stanolind Oil & Gas Co., supra. Neither is it material, so far as Mrs. Davis' power to convey is concerned, that she acted as an unqualified community survivor in making the deed to the bank; Stove v. Jackson, supra; Fidelity Union Ins. Co. et al v. Hutchins, et al, 134 Texas 268, 7 TSCR 232, 133 S. W. (2d) 105, 135 S. W. (2d) 695; or that the deed was made more

than four years after the decease of her husband. Stone v. Jackson, supra; Martin v. Dial (Com. App.) 57 S. W. (2d) 75, 89 A. L. R. 571; Jennings v. Borton (wr. ref.), supra; Kauffmann v. Hahn, 59 S. W. (2d) 435. Nor does it make any difference whether the debts in question were secured or unsecured, so far as Mrs. Davis' power to make the conveyance for their payment is concerned, especially since she was not acting as an administrator under the statute. Griffin et al v. Stanolind Oil and Gas Co., supra; Ashe v. Yungst, 65 Texas 631; Stone v. Jackson, supra, and authorities there cited; Jung v. Petermann, supra.

■ Under the decisions cited above, and the settled holdings of this Court, the minor children of Mrs. Davis had no such rights against her as survivor as to prevent the sale of the homestead by her to pay community debts. This holding is not in conflict, as contended by plaintiffs, with Milner v. McDaniel, 120 Texas 60, 36 S. W. (2d) 992 and Johnson v. Hampton, 117 Texas 580, 8 S. W. (2d) 640. They do not hold that the homestead is not subject to voluntary conveyance by the survivor to satify community debts, but that at the death of the parents the homestead was not subject to forced sale if constituent members of the family remained to take and occupy it as such. See in this connection Thompson et al v. Kay et al, 124 Texas 252, 77 S. W. (2d) 201. The minor children had no such rights against their mother as to prevent the sale by her to the bank.

When the land in question was conveyed to Davis in 1919 he executed in consideration therefor certain vendor's lien notes and assumed the payment of others, as above stated. These notes were due on the first of January, 1921, following Davis' death in June, 1920, in a sum aggregating in excess of $1,000.00. Davis at the time of his death was carrying two policies (W. O. W. and Yeoman) of life insurance payable to Mrs. Davis, the proceeds of which aggregated about $1480.00. From the proceeds received as beneficiary in the policies Mrs. Davis, according to the holding of the Court of Civil Appeals, paid the notes. Its holding is predicated upon its additional holding in this connection that Mrs. Davis having paid the notes out of her separate funds, had the power to sell the property and to reimburse herself for the money paid out.

■ It was contended by plaintiffs in the courts below, and is here, that an express parol trust was engrafted on the proceeds of the insurance policies by virtue of an agreement made by Mr. and Mrs. Davis with respect to applying it in the event of his death before hers, to pay the indebtedness, if any, against

the property at such time. The Court of Civil Appeals upheld the judgment of the trial court, expressing the view that the testimony bearing upon the question, was not sufficient to establish the trust. Its conclusion that the parol trust was not established is final. Pegues v. Dilworth, 134 Texas 169,, 132 S. W. (2d) 582, 7 TSCR 191.

■ We approve the holding of the Court of Civil Appeals that the insurance proceeds was the separate property of Mrs. Davis (Martin v. McAllister, 94 Texas 567, 63 S. W. 624, 56 A. L. R. 585; San Jacinto Bldg. Inc. v. Brown (wr. ref.), 79 S. W. (2d) 164; Tweedie Footwear Corp. v. Fonville et al (wr. ref.) 115 S. W. (2d) 421) and that she had power to sell the property to reimburse herself for the money, if any, paid out by her in satisfaction of the community indebtedness outstanding at the time of the death of her husband. Martin v. McAllister, supra; Leatherwood v. Arnold, 66 Texas 414, 1 S. W. 173; Jennings v. Borton, 44 Texas Civ. App. 280, 98 S. W. 445 (wr. ref.).

■ This brings us to a consideration of the final contention of plaintiffs urged in connection with the fourth proposition, supra. It is that there is no evidence to establish the existence of any community debts at the time Mrs. Davis sold the land. It is not contended that there was no community indebtedness when Mr. Davis died. The testimony is undisputed that there was. The contention is, precisely stated, that there is no competent evidence to establish the existence of such indebtedness at the very time Mrs. Davis made the deed to the bank.

It is conceded by plaintiffs that if the power exists in an unqualified community survivor to sell the community property to pay community debts a presumption of fact arises that its sale by such survivor was made for such purpose. It is contended, however, that this presumption falls in the face of the recitation of the deed by Mrs. Davis to the bank that the consideration paid was for the cancellation of a note due the bank executed by Mrs. Davis and one of her sons for $450.00 and another note for $550.00 due J. W. Wall signed by Mrs. Davis, and other items which were not during the lifetime of Mr. Davis, indebtednesses existing in the form recited. It is contended in this connection also that the burden of proof was upon defendants to establish that Mrs. Davis sold the land to pay community debts, and that they failed to discharge this burden.

The recitation in the deed particularizing the items of indebtedness paid by the consideration is that they were to dis-

charge an "indebtedness created by C. M. Davis and Mrs. M. A. Davis during their marital relation," with the exception of expenses for the burial of the deceased.

It does not necessarily follow, however, that the trial court determined that the items designated were in their original form, especially in view of the fact that no findings of fact or conclusions of law were filed, or requested. As stated by Judge Gaines in Johnson v. Archibald, 78 Texas 96, 14 S. W. 266:

"At all events, there being no conclusion of fact and law found in the record, if the evidence is sufficient to support the judgment upon any defense presented in the case it is to be presumed that the court found in favor of the defendant upon that issue."

We cannot say in view of the record before us that there is no evidence to support the conclusion that Mrs. Davis sold the land for the purpose of reimbursing herself for the payment of community indebtedness (evidenced in a different form from that in which created) out of her separate property, as will presently appear.

It is undisputed that when the land was conveyed in 1919 to Mr. Davis he executed certain vendor's lien notes and assumed the payment of others, and that part of such outstanding indebtedness was due at the time of his death on June 3, 1920. The facts and conclusions concerning the life insurance proceeds have already been stated. The stepson testified that neither his father, a retired minister, nor his stepmother, had means of any consequence; that the father at the time of his death was indebted to the bank, the exact amount of which he did not know. Oliver M. Davis testified that in 1920 he signed a note with his father due to the bank in October of that year; that he did not remember just how much of the note was carried over, but that Ed, another brother, probably signed with his mother after Oliver moved out in the fall of 1920. He testified also that his mother took "the insurance money that she got * * * and paid off the land notes against the land"; but that he did not know whether they were the notes his father executed for the land or those assumed; also that his mother, after his father's death, paid more than $1,000.00 to J. W. Wall from insurance money in settlement of the land notes his father had made or assumed. Mrs. H. V. Davis (not related to the members of the Davis family here involved), bookkeeper for J. W. Wall through the years 1920 to 1924, testified that J. W. Wall at the time of the death of Mr. Davis held land

notes against the land in an amount around $1200.00 to $1400.00 and that Mrs. Davis after the death of her husband paid Mr. Wall for vendor's lien notes which he held. J. L. Davis, who signed the deed with Mrs. Davis, testified that after his mother collected the insurance money from the Woodmen of the World and the Yeoman, she paid off the land notes against the land and that he knew this of his own personal knowledge. H. P. McGaughy who was connected with the bank during the time of the transactions in question, testified that Mr. Davis, in January 1920, gave the bank a note for $550.35 secured by a mortgage on certain livestock and other personal property; that the bank held the claim due J. W. Wall of $550.00, and paid him for that; also that the bank by virtue of the execution of the deed to it cancelled the note for $450.00 therein referred to; also that the bank paid the taxes referred to in the deed as assumed by it.

The foregoing testimony is largely from the cross examination of witnesses who were called by plaintiffs, with the exception of McGaughy's and Mrs. H. V. Davis'. It is not conclusive in its effect, but was competent evidence of a substantial nature to support a conclusion on the part of the trial court that the indebtedness referred to in the recited consideration was the then form of the community indebtedness existing when Mr. Davis died.

In view of the record stated we are unable to say there was no testimony before the trial court to support a judgment for defendants predicated upon a finding of the trial court that Mrs. Davis sold the land to reimburse herself for the payment by her of community indebtedness out of her separate property. As the trial court was the trier of the facts as well as the law and there was some evidence to support the judgment rendered, the question of the burden of proof becomes immaterial for present purposes.

The judgment of the Court of Civil Appeals affirming that of the trial court, is affirmed.

Opinion adopted by the Supreme Court January 3, 1940.