Elizabeth Hames et al. v. L. D. Stroud et al.

Decided July 3, 1908.

1.—Attorney and Client.

An attorney in dealing with his client must act with the utmost fairness and in perfect good faith. Certain dealings between an attorney and his client considered, and held not a violation of this rule.

**2.—Husband and Wife—Sale of Community Property by Survivor.**

A surviving wife, before remarrying, has the right to dispose of community property to pay off and settle community debts, especially where the debt is an encumbrance on the particular property sold, and this, irrespective of the rights of the children in the property.

**3.—Notes—Innocent Purchaser.**

A bona fide purchaser of vendor's lien notes for a valuable consideration and without notice, can not be defeated by the fraud of the vendor in procuring the notes.

Appeal from the District Court of Rockwall County. Tried below before Hon. F. L. Hawkins.

*Chas. G. Evans* and *F. W. Bartlett,* for appellants.

*T. B. Ridgell* and *Word & Charlton,* for appellees.

RAINEY, CHIEF JUSTICE.—This suit was instituted May 14, 1906, by Elizabeth Hames and her seven children, two of whom were minors, against L. D. Stroud and M. S. Bailey. The nature of the suit was to set aside a certain conveyance for fraud, and to recover 124 acres of land, alleging, in substance, that L. D. Stroud, the attorney for appellants, had, as such attorney, gained their confidence, and had thereby fraudulently overreached them in his dealings with them. Answers were filed, and upon a hearing the court instructed a verdict for defendants, and judgment was rendered accordingly, from which this appeal is prosecuted.

The appellants complain that the court erred in directing a verdict for defendants. All the assignments are based on this, and, if there is no error in the court's action in this respect, all the other assignments of error fail, and need not be discussed.

The evidence, in substance, shows that Levi Hames and Elizabeth Hames were husband and wife, and had seven children, viz.: Fred, Georgia, Thomas, Garfield, Arthur, Mansfield and Levi Hames, the last two minors at the institution of this suit. In 1897 Levi Hames died intestate, leaving surviving him his wife, said Elizabeth Hames, and said children. At the time of said Levi Hames' death he and his wife owned as community property the 124 acres of land in controversy, on which existed a certain amount, about $700, due for purchase money. Thereafter, on March 15, 1898, one W. H. Atherton was appointed and qualified as administrator of the estate of Levi Hames. Atherton and wife being the owners of the notes given for said purchase money, transferred them to one W. L. McCord, together with such title as they had in the land. McCord failing to collect said notes through the Probate Court, and said administration being closed, instituted suit in the District Court to recover on said notes and to foreclose the vendor's lien on the land, making Atherton, administrator, Elizabeth Hames and all her children parties to said suit. On May 9, 1900, Elizabeth Hames and four of her children, viz., Fred, Thomas, Georgia and Mansfield Hames, executed their two promissory notes for $250 each, with ten per cent. interest, payable to the order of L. D. Stroud, and to secure the payment of said notes they executed a deed of trust on their interest in said 124

acres of land. In consideration of said notes said Stroud agreed to se-
cure legal services in defending the foreclosure suit brought by McCord
as aforesaid, and said Stroud further agreed as follows: "Now, I under-
take and agree to defend said suit, or any other suits that may be brought
by said McCord, or any other person or persons, on said pretended vend-
or's lien notes; and in case I fail entirely to defeat said suit or suits, then
the two notes this day executed to me by said Mrs. Elizabeth Hames and
her other children above named shall not be collected by me. In case I
shall by any means defeat as much as one-half of said claim, then I shall
only be allowed to collect the first note. I hereby agree that I will not
transfer, assign or sell said notes to any other person without the consent
of the said Mrs. Elizabeth Hames and the others whose names are signed
thereto."

The McCord suit was dismissed, plaintiff taking a nonsuit. Subse-
quently McCord brought a second suit against the Hameses, seeking to
recover the land, asserting superior title, or in the alternative for a re-
covery of about $1,200 claimed as due for the purchase price of said land.
L. D. Stroud procured the services of Word & Charlton, at-
torneys, to assist in the defense of said suit, and in consid-
eration therefor transferred to them one of the notes for $250.
This suit resulted in a judgment in favor of McCord for
$572.50 and a foreclosure of the vendor's lien. In both of said
suits the said Stroud rendered his services with the assistance stated in
full compliance with his contract. During the pendency of the McCord
suits four of Elizabeth Hames' sons, viz., Thomas, Mansfield, Garfield
and Arthur, together with one Scott, were indicted and jailed, charged
with the theft of hogs, whereupon, on January 20, 1903, the said Eliza-
beth Hames and said sons, desiring the legal services of the said Stroud,
entered with him into the following contract: "Know all men by these
presents, that this contract this day made and entered into by and be-
tween L. D. Stroud, on the one part, and Mrs. Elizabeth Hames, Georgia
Hames, Thomas Hames, Garfield Hames and Arthur Hames, on the
other part, witnesseth: That the said L. D. Stroud hereby agrees to and
binds himself to become the counsel and attorney of the said Thomas
Hames, Mansfield Hames, Garfield Hames and Arthur Hames, for four
hundred dollars in each case, who are now in jail charged with theft of
hogs, and to defend them against said charge in all of the courts in
which said charge may be prosecuted, as well as to prosecute any appeals
which may be necessary to the higher courts, as well as to counsel with
and advise in all matters necessary in and about securing their acquit-
tal of said charge; and the said Stroud further agrees at the same price
($4,400), and binds himself, to likewise counsel and defend Joe Scott,
connected with, or who may be connected with or accused of said charge,
either as principal or accomplice, in the offense charged against said first
four named persons so charged. And he further agrees and binds him-
self to continue as attorney and counsel of the said Mrs. Elizabeth Hames
and all other defendants in a certain suit pending in the District Court
of Rockwall County, wherein one W. L. McCord is plaintiff, seeking
to establish a debt and foreclose a lien against a certain tract of land
situated on the west side of the East Fork of Trinity River in Rockwall
County, and being 124 acres of the E. R. Foster survey.

And in the event that said McCord, or any of his assigns, successors or administrators, or other legal representatives, shall recover said debt therein claimed, or any part thereof, the debt claimed being estimated at about $1,200, then the said Stroud agrees and binds himself to pay off and discharge the same within twenty days from the rendition of final judgment, but he shall have the right to prosecute an appeal to any of the higher courts and suspend said judgment by an appeal supersedeas bond, in which event he shall pay off and satisfy any and all judgments, as well as costs, which may be rendered in said cause. And the said Stroud further agrees and binds himself to procure bail for said defendants in said criminal charge, and procure their release from their present custody, and to keep them at liberty until they are finally tried, provided that said defendants shall not depart from Rockwall County, where they are bound to appear, without the consent of the said Stroud, but each shall report to him once every week from and after the date of said bond. And the said Stroud further agrees and binds himself to pay off and discharge a certain note, now amounting to about $300, held by Word & Charlton, of Dallas, Texas, and secured by a deed of trust lien on said land, which note is now overdue, and surrender to said Elizabeth Hames her note for $107. In consideration of the foregoing obligations of the said L. D. Stroud the said Elizabeth Hames, Georgia Hames, Thomas Hames, Garfield Hames and Arthur Hames, joined by one T. B. Ridgell, have this day executed and delivered to the said L. D. Stroud a good and sufficient general warranty deed of even date herewith, conveying to him said 124 acres of land. Now it is agreed, and fully understood, by the parties to this contract and the parties to said deed, that if the said Mrs. Elizabeth Hames, acting for herself and also on behalf of the said Georgia Hames, Thomas Hames, Garfield Hames and Arthur Hames, shall procure, on or before January 1, 1904, a purchaser or purchasers for said tract of land, on terms of one-half cash and balance in two equal notes due in one and two years, respectively, from the date of said purchase, and bearing interest at the rate of eight per cent. per annum from date, and which shall amount to more than what the said Elizabeth Hames, Georgia Hames, Thomas Hames, Garfield Hames and Arthur Hames shall be obligated to pay the said Stroud by reason of liabilities he has assumed, and together with his said attorney's fees, then the said Stroud binds himself to make to said purchaser, upon the terms aforesaid, a good and sufficient deed when requested to do so by the said Mrs. Elizabeth Hames. Said Stroud further binds himself to pay to Mrs. Elizabeth Hames and the others for whom she acts all of the surplus price which the said land shall bring over and above said consideration and obligations, provided that he is not yet liable in said McCord suit; but when said suit is finally settled, if said McCord shall not recover, then the said Stroud binds himself to pay to said Elizabeth Hames, and all of the other grantors in said deed except the said T. B. Ridgell, the full amount for which said suit is brought, as a part of the consideration of said deed. And if the said McCord shall only recover part, then said Stroud binds himself to pay the difference between the full amount sued for and the amount actually recovered, and costs therein. It is agreed and understood that Elizabeth Hames and her children shall occupy said premises as tenants of the said L. D. Stroud

for the year 1903, and pay him $100 rent, to be paid on the first day of December of said year. It is further agreed that if said suit of W. L. McCord is tried and disposed of before the first day of January, 1904, and if said first four named criminal cases shall be tried and disposed of, or said Stroud's liability, by reason of making said bail bonds, shall cease by the final disposition of said cases before the first day of January, 1904, and if the said Mrs. Elizabeth Hames shall repay to said L. D. Stroud all moneys he is compelled to pay by said McCord suit, and shall repay what he has assumed and paid on said Word & Charlton note, and shall also pay to him all attorney's fees which may be due him under this contract before January 1, 1904, then the said L. D. Stroud binds himself to reconvey said land by a good and sufficient deed to the said Elizabeth Hames and her children, who have signed the same, provided said land has not been sold at her request, as hereinbefore provided. Subject to the foregoing conditions the said deed is absolute."

On said date Elizabeth, Georgia, Thomas, Garfield and Arthur Hames and T. B. Ridgell executed to said Stroud a deed of conveyance to said land, reciting a consideration of $2,500. All of the criminal cases were disposed of as follows: Scott became a witness for the State and thereby secured an acquittal. Three of the Hames boys were acquitted and the other forfeited his bond, and has never been tried. T. B. Ridgell assisted in the trial of the criminal cases, with the knowledge of the said Elizabeth Hames and the accused, and Stroud paid him for such services $400.

After the affirmance of the McCord judgment by this court, Stroud, in keeping with his agreement so to do, took steps to pay the same, and thereby protect the land from sale in satisfaction of the foreclosed vendor's lien. He paid the costs of this court, and procured the issuance of its mandate. He then had a conference with Elizabeth Hames as to the best course to be pursued for the protection of the interests of all parties. Elizabeth Hames wished to retain the land. Some question arose between her and Stroud at this conference as to the character of the deed which he held to the land, she insisting that it was only a mortgage, while he was disposed to regard it as a straight-out deed. This matter was adjusted by Stroud agreeing that, however the disputed fact might be, he would reconvey the land to the grantors, upon their paying him what was due and owing to him. This was satisfactory to Elizabeth Hames, if some means could be devised for raising the necessary cash money. The land furnished the only basis for hope in this direction. Stroud told her that he doubted if a loan could be secured on an undivided interest in the land, and that he thought the best hope would be to take necessary steps to involve the two minors' interests along with those of the others. They discussed the question of taking out letters of guardianship on their estates, but concluded it would be too expensive. Stroud then suggested that the land be sold in satisfaction of the McCord judgment, with the understanding that he would bid it in at the sale, and afterwards convey it to her, thereby putting the legal title to the entire tract in her. This was thought to offer the best and cheapest and most equitable settlement of the matter. Elizabeth Hames agreed to that course, and it was pursued successfully. After the sale under the McCord judgment Stroud and Elizabeth Hames had another confer-

ence, with a view to adjusting matters between them. In this conference she represented all of the plaintiffs in this suit, according to the allegations of their petition herein. At this conference, in June, 1905, disputes arose between them as to the amount due Stroud, and as to other matters. These disputes were all satisfactorily compromised and adjusted between them. The conference ended by a reconveyance of the land by Stroud to Elizabeth Hames, in consideration for her four vendor's lien notes, three for $1,000 each and one for $263. In this settlement Stroud's claim amounted to over $4,100, but he settled for the four notes stated. The children, except the two minors, consented in writing to the reconveyance of the land by Stroud to their mother. Stroud, soon after the settlement, transferred the notes to defendant Bailey, receiving cash therefor. Default was made in the payment of the first note when due, and by their terms, this matured the others, at the option of the holder. Elizabeth Hames sought to secure a loan on the land, with a view to taking up the notes, but was unsuccessful. Suit was brought by Bailey on all of the notes, and to foreclose the vendor's lien on the land. No defense was made by Elizabeth Hames, and the judgment went as prayed for. The land was sold under this judgment, and was bought in by defendant Bailey.

In the McCord suit Ridgell was allowed by the court $300 as guardian ad litem for representing the minors, and no exceptions were taken thereto in that suit, and this amount was paid by Stroud. Bailey was an innocent purchaser of the notes—had sued on them, and recovered judgment by default, foreclosing the lien on the land.

The evidence in the case, we think, shows that Stroud faithfully performed the services as attorney in the litigation that he contracted to perform. He had prevented a recovery in the first suit instituted by McCord. In the second suit he had prevented a recovery of the land by McCord, and had caused a reduction in the amount claimed nearly one-half. The criminal suits had been successfully defended, with the exception of one of the sons who had forfeited his bond and fled the country, and whether or not Stroud has incurred liability on this the record does not disclose. His fees in the criminal cases seem high, but the only testimony on this point is that they were reasonable. The sons were in jail, and the mother was distressed, when the contract for the fee was made, but Stroud was not responsible for the existence of such facts, and was under no obligation to defend the boys, and had the right to exact the terms upon which he was willing to undertake their defense.

We appreciate the rule that obtains with respect to the relation between attorney and client. The attorney, in dealing with the client, must act with the utmost fairness and in perfect good faith. There was no misrepresentation made by Stroud in dealing with said clients shown by the evidence. He made a contract with reference to his fees and securing the payment thereof, and this he had a right to do. It seems that, after a deed had been given him to the land, the parties expressed a wish to retain it, or that they only intended it as a mortgage, when he reconveyed it to them, reserving a lien thereon to secure what was due him. Not only this, but in this settlement, in which all parties seemed to be satisfied, he reduced his claim of $4,199 to $3,263, for which he accepted notes, with a lien to secure it, and for nearly two years there seems

to have been no complaint from the parties, and not until a writ of possession was issued, when this suit was brought.

The survivor of community, the wife, before remarrying, has the right to dispose of community property to pay off and settle community debts, especially is this so where the debt is an encumbrance on the particular property, and this, irrespective of the rights of heirs in the property. Davis v. McCartney, 64 Texas, 584; Henry v. Vaughan, 103 S. W., 192; Withrow v. Adams, 4 Texas Civ. App., 445.

McCord recovered a judgment foreclosing a lien on the land for the purchase money thereof, which encumbrance existed before the death of Levi Hames, and Elizabeth Hames, as community survivor, had the right to dispose of the land in settlement of said encumbrance, and the various transactions had in relation thereto were sufficient to divest title out of plaintiffs, and before they could recover the land they must at least offer to pay the amount acknowledged to be due on said land, but this they have not done.

Bailey having become the owner of said notes for a valuable consideration, without notice, and having procured a judgment thereon foreclosing the lien on the land, can not be defeated for the alleged fraud of Stroud.

We are of the opinion that the evidence is such that no other judgment should be rendered thereon, and the court properly directed a verdict for defendants, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.