FIDELITY UNION INSURANCE COMPANY ET AL V. TATE HUTCHINS ET AL, BY NEXT FRIEND.

No. 7376. Decided November 22, 1939.
Rehearing overruled January 24, 1940.
(133 S. W., 2d Series, 105; 135 S. W., 2d Series, 695.)

*Wagstaff, Harwell, Wagstaff & Douthit,* and *Cox & Hayden,* of Abilene, and *Malone, Lipscomb, White & Seay,* of Dallas, for plaintiff in error.

G. B. Hutchins, Sr., being the legally qualified community survivor of the estate of himself and his wife was authorized to manage and control same as his best judgment indicated, and when he made investment in good faith without any hope of enumeration to himself, and such investments resulted in a financial loss and there was no evidence of waste or devastavit his bondsmen should not be held liable on the administrator's bond. Clemons v. McDowell, 12 S. W. (2d) 955; Coleman v. Coleman, 293 S. W. 695; 65 C. J. 819.

*Kirby, King & Overshiner,* of Abilene, for defendants in error.

The community survivor, being charged with the value of all of the community estate was accountable to the heirs for a full and fair accounting of all community debts and expenses as well as increases and profits, and he having used the same

as his own property, constituted a conversion of plaintiffs' interest and made the community survivor and his bondsmen liable for such conversion of their legal interest. Leatherwood v. Arnold, 66 Texas 414; Graham v. Miller, 62 S. W. 113; Speer's Marital Rights, p. 842.

MR. JUSTICE CRITZ delivered the opinion of the Court.

It appears from the record before us that prior to February 23, 1926, G. B. Hutchins and Eula E. Hutchins were husband and wife, living together in Dawson County, Texas. They had two children, Tate and G. B. Hutchins, Jr., both boys, aged 11 and 9 years, respectively. On the date above mentioned Eula E. Hutchins died intestate, leaving as her only heirs at law the two boys above named, and her surviving husband, G. B. Hutchins.

On August 4, 1928, G. B. Hutchins filed in the probate court of Dawson County, Texas, his application to qualify as community survivor of the community estate of himself and his deceased wife, as provided for by Article 3663 et seq., R. C. S. 1925. After the filing of the above application, the probate court of Dawson County entered an order appointing three appraisers to appraise the community estate of Eula E. Hutchins, deceased, and her surviving husband, G. B. Hutchins, as authorized by Article 3665, R. C. S. 1925.

In due time there was returned into the probate court of Dawson County the inventory and appraisement of the estate here involved, together with a list of community debts due such estate, and a list of all debts due by such estate to other parties, as required by Article 3666, R. C. S. 1925.

As shown by the inventory and appraisement and list of claims and list of debts above mentioned, the community estate here involved consisted of properties and values as follows:

ASSETS

| | |
|---|---:|
| 320 acres of land, Dawson County, Texas, valued at_$ | 8,000.00 |
| 3 lots in Lamesa, Dawson County, Texas, valued at | 3,000.00 |
| 1 A. H. Merrick note | 870.00 |
| 5 A. H. Merrick notes for total sum of | 8,700.00 |
| 1 Herring note | 900.00 |
| 1 Herring note | 300.00 |
| 5 M. L. Standifer notes for total sum of | 1,000.00 |
| Total assets | $22,770.00 |

LIABILITIES

Due State on 320 acres of land _____$    468.00
Due on 3 lots in Lamesa, supra_____  1,000.00

Total liabilities _____$  1,468.00

Taking the $1,468.00 liabilities from the $22,770.00 of assets, we have $21,302.00 net value of the community estate, as shown by the inventory and appraisement and list of claims and list of debts, supra.

It appears that in due time G. B. Hutchins filed in the probate court his community bond in the sum of $23,000.00, conditioned as required by law. This bond was signed by G. B. Hutchins as principal and Fidelity Union Casualty Company as surety. This bond in all things complies with Article 3667, R. C. S. 1925.

It also appears that on August 6, 1928, the above inventory, appraisement, list of claims, and list of debts, and said above bond were all examined by the court and duly approved by him, by an order to that effect entered on the minutes of the court. Simply stated, it appears that G. B. Hutchins duly qualified as community survivor in the manner and form provided by the statutes of this State on August 6, 1928.

It appears that the estate owned a note for $2,500.00 executed by one Hamilton, not listed in the list of claims. Also, it appears that the estate had on deposit in bank $833.00, which was not listed.

As we gather from the record, G. B. Hutchins realized from the money and notes of the estate as follows:

Herring notes _____$  1,200.00
Standifer notes _____  1,000.00
Merrick notes for $8,700.00 and $870.00_____    125.00
Hamilton note for $2,500 (not listed) _____  1,056.00
Cash in bank (not listed) _____    833.00

Total _____$  4,214.00

We shall not attempt a full detailed statement of all the transactions G. B. Hutchins had with regard to the several properties of this estate, or of the properties acquired by him from some of its proceeds, as, under the view we take of the law, that would serve no purpose. We do, however, make the following statement of what became of the properties of this estate.

(a) The 320 acres of land listed in the inventory was mortgaged by Hutchins for $5,500.00. This mortgage was never paid. The lien was foreclosed, and the land thereby lost to the community estate.

(b) Hutchins borrowed $3,000.00 from a bank, and gave as security therefor the community notes above set out.

(c) Hutchins traded the estate's equity in the three lots set out in the inventory, supra, as part of the purchase price for a tract of 158 acres of land purchased by him. These lots were thus lost to the community estate.

(d) Hutchins bought the 158 acres of land mentioned in (c), supra. He paid thereon the three lots in Lamesa and most of the $5,500.00 borrowed on the 320 acres of community land and the $3,000.00 borrowed on the community notes, and some additional cash.

(e) Hutchins paid the community debts amounting to $1,468.00. We understand that the $468.00 due on the 320 acres of land was paid by G. B. Hutchins. The $1,000.00 due on the 3 Lamesa lots was assumed by the purchaser thereof.

(f) The 158-acre tract of land was conveyed to Hutchins for a recited consideration of $15,800.00, of which $10,200.00 was recited in the deed as paid in cash, and the balance, $5,600.00, was represented as liens against the land assumed by Hutchins. Hutchins seems to have paid some part of this assumed indebtedness, but in the end the lien held by the holder of the assumed indebtedness was foreclosed, the land sold, and thus was entirely lost by Hutchins.

(g) All the money in bank and that deprived from the community notes, supra, was appropriated by Hutchins to his own use, except as shown above.

(h) As a final result of Hutchins' management and dealings with the community estate, the whole thereof was entirely dissipated and lost. The heirs of the deceased spouse have never received one penny therefrom.

After the entire community estate here involved had been lost to these minor plaintiffs, and even to the qualified community survivor, in the manner above detailed, these plaintiffs, who are the minor sons of G. B. Hutchins and his deceased wife, Eula E. Hutchins, by next friend, sued G. B. Hutchins, the survivor, and the surety on his official bond, Fidelity Union Casualty Company, a corporation, to recover a money judgment for the value of their one-half interest in the community estate here involved. Commercial Casualty Company, a corporation, is also sued. As shown by the opinion of the Court of

Civil Appeals, the two corporations just named were consolidated after this bond was executed and approved. The corporation last named took over all the assets of the corporation first named, and assumed all its liabilities, except no liability was assumed for any loss accruing prior to January 1, 1931. We will deal with this matter later in this opinion.

We will not attempt a detailed statement of the pleadings of the several parties to this action. It is enough to say that we regard the pleadings of the plaintiffs as sufficient to entitle them to recover under the law, as we will announce it in this opinion. Also, we regard the pleadings of the defendants, the two insurance companies, as sufficient to raise the issues of law and fact involved in their defense to this action. We here pause to remark that the defendant, G. B. Hutchins, waived service and made his appearance in this cause in writing. He, however, appeared no further, and offered no defense to the plaintiffs' alleged cause of action.

The case was finally tried in the district court before the court without the intervention of a jury, and judgment rendered for the two minor plaintiffs against G. B. Hutchins as principal and the two above-named corporations as sureties for the sum of $6,873.00. This sum was arrived at by the trial court as follows: The court valued the 320 acres of land, supra, at $8,000.00. He valued the Lamesa lots at $3,000.00. The money in the bank was valued at the amount thereof, $833.00. The notes belonging to the estate were valued at the amount realized thereon by G. B. Hutchins, $3,391.00. Thus it appears that the trial court valued the estate at $15,214.00. The court found the total of the community debts was the sum of $1,468.00. These debts had, in effect, been paid by G. B. Hutchins shortly after he qualified as community survivor. The trial court deducted from the total value of the community estate the total amount of the community debts. A net community estate of $13,746.00 was thus shown. Judgment was then rendered in favor of these minor plaintiffs for one-half this last-named sum,—$6,873.00. The trial court's judgment provides for interest on this last-named sum at 6 per cent. per annum from October 18, 1928. We will later refer to this matter of interest.

The two corporate defendants duly appealed to the Court of Civil Appeals at Eastland. On final hearing in that court it was held that the judgment of the trial court was correct for the principal amount thereof, $6,873.00, but that interest thereon should have been allowed only from the date of the filing

of the suit on December 8, 1934. The judgment of the trial court was so modified, and as so modified, was affirmed. The opinion of the Court of Civil Appeals was written by Associate Justice Grissom, and finally concurred in by Chief Justice Leslie. On rehearing, Associate Justice Funderburk filed a "minority opinion." 111 S. W. (2d) 292. The case is before this Court on writ of error granted on application of the two corporations. For further statement of the facts of this case we refer to the opinion of the Court of Civil Appeals.

■ We think that it goes without saying that the rights, powers, and liabilities of the qualified community survivor are fixed and determined by pertinent statutes. Without qualifying under any statute the surviving spouse may sell the community property to pay community debts. On the other hand, it is not required that there be any community debts to enable the survivor in community to qualify, as such, under Article 3663 et seq., R. C. S. 1925. Burnson v. Yount-Lee Oil Co., 122 Texas 237, 56 S. W. (2d) 1073. It is thus evident that the community survivor can qualify as such under applicable statutes and exercise all rights and powers defined by such statutes, whether there be any community debts or not. Also, under the same conditions, he is subject to all the liabilities defined by such statutes. It must follow that his rights, powers, and liabilities are purely and absolutely statutory.

We shall not attempt to discuss or construe all the articles contained in the chapter on community administration, as it is not necessary to do so to arrive at a correct dispostion of this case. It is provided by Article 3667 that the survivor shall make and file a good and sufficient bond, conditioned that "he will faithfully administer such community estate, and pay over one-half the surplus thereof after the payment of the debts with which the whole of such property is properly chargeable to such person or persons as shall be entitled to receive the same." It is provided by Article 3668 that the county judge shall examine and approve such bond, and that the order of approval shall authorize the survivor to control, manage, and dispose of such community estate in accordance with the provisions of the chapter of which such article is a part. Articles 3667 and 3668 also deal with the inventory, appraisement, etc. It is provided by Article 3669 that when the order provided by Article 3668 has been entered, the qualifying survivor shall, without any further action of the court, have the right to control, manage, and dispose of the community property as may seem for the best interest of the estate, and of suing and being

sued with regard to the same, in the same manner as during the lifetime of the deceased spouse.

██ It will be noted that the liabilities of the survivor are fixed by the conditions of the bond. There are two general conditions contained therein. The first of these is that the survivor will faithfully administer the community estate. The second condition is that the survivor will pay over one-half the surplus, after the payment of debts, to those entitled to receive it. Of course, Article 3667 must be read and construed with Article 3670. This last-mentioned article provides that the survivor shall "keep a fair and full account and statement of all community debts and expenses paid by him, and of the disposition made of such community property; and, upon final partition of said estate, shall account to the legal heirs of the deceased for their interest in such estate, and the increase and profits of the same, after deducting therefrom all community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission for the management of the same." Thus it appears from a reading of Article 3667 and 3670 together that the qualified community survivor must account to the heirs for the net community estate. The net estate is defined in particular detail by Article 3670. Under the express terms of Article 3668 and 3669 the qualified survivor has the absolute right and power to sell or otherwise dispose of the entire community estate. It must follow that when all pertinent statutes are construed together the heirs of the deceased spouse have an action on the bond in cases where the community estate, or any part thereof, has been dissipated by the survivor. If this is not the purpose of the bond, then it can have no purpose whatever. It is also clear to us that the effect of the above statutes is to give the heirs a right to stand on the property constituting the community estate at the time the survivor qualifies. It follows that they rest under no obligation or duty to follow the proceeds of such property after it is sold, or otherwise disposed of.

██ We often refer to the qualified community survivor as a community administrator. Strictly speaking, he is not an administrator at all. He is a statutory trustee of a very unique character, and of very extraordinary powers. These powers, however, are defined by statute. When either the husband or wife dies leaving community property, the surviving spouse can qualify as community survivor, regardless of whether or not there are community debts, and in spite of the fact that the deceased spouse has left heirs entitled, under the law, to take as such. The surviving spouse is the owner of one-half of the

community property. By qualifying under the statute he acquires the right not only to manage, control, and dispose of his one-half, but of the other one-half as well. Simply stated, the qualified survivor has the right, to the exclusion of the heirs, to take charge of the entire community estate, and manage, control, and dispose of it as he sees fit. The law makes no attempt to direct the qualified survivor how to administer the community estate. As already stated, his liability is fixed by the bond construed in the light of Article 3670. He must faithfully administer and finally account. The statutes absolutely define the object to be accomplished, but leave the means of such accomplishment to the discretion of the survivor. He may sell or otherwise dispose of all or any part of the community property. He may do this regardless of whether or not there are any community debts. He may use the proceeds of such sale as he sees fit. He makes no report to the probate court. As a general rule, the ordinary trustee must account for the trust estate by items; but, as already stated, a qualified community survivor is only responsible for results. He may even give away the community property, provided he has extinguished, or thereafter extinguishes, the community interest in the property given away. Leatherwood v. Arnold, 66 Texas 414, 1 S. W. 173; Huppman v. Schmidt, 65 Texas 583.

■ When the community estate has been wasted, the bond takes the place of the wasted property, and a cause of action exists in favor of the heirs of the deceased spouse on the bond of the qualified survivor for a money judgment in any court of competent jurisdiction. Brown v. Seaman, 65 Texas 628. In the case just cited it was held that an administrator appointed to succeed a qualified survivor shall be a representative of the estate, the heirs, and the creditors; and that as such representative he could properly bring suit on the bond where the survivor had wasted the estate. Certainly, if the representative of an heir can sue for his benefit, the heir can sue for himself.

■ From the undisputed evidence in this record, G. B. Hutchins, in legal effect, sold the land of this estate and invested the proceeds thereof in other lands in his own name. Also, from the undisputed evidence it appears that he appropriated all the net property belonging to this estate, except that invested in other lands, to his own use and benefit. In these ways he has dissipated or wasted the entire community estate. He was the statutory trustee of the properties of this estate. He has failed to account to the heirs as the law directs. He is therefore guilty of devastavit. A trustee who fails to apply the funds of his

trust estate as the law directs, or who wastes such estate, is guilty of a devastavit. 18 C. J. 1031.

■■ It is evident from the provisions of Article 3670 that a qualified survivor is not liable on his bond for unavoidable losses. It is also very plain to us that when a qualified community survivor manages the estate in a careful and prudent manner, but in spite of such management losses occur, such losses are unavoidable within the meaning of the statute. It is further evident to us that should losses occur from a cause, or causes, beyond the reasonable control of the survivor, such losses should be regarded as unavoidable. None of the rules of law offer any comfort to those liable on this bond. This estate was dissipated by sales and conversions by the qualified survivor, and no issue of prudent management or unavoidable losses has been presented. Simply stated, under the undisputed facts in this record, this survivor simply used the assets of this estate in engaging in business for himself, or activities for his own use, and thereby lost them all. These children are therefore entitled to recover on this bond.

■ It is the general rule that a trustee is not an insurer of results. 65 C. J. 650. As already stated, however, a qualified community survivor is not an ordinary trustee. He is a statutory trustee whose duties and liabilities are defined by statute. It is true that he is not an absolute insurer of results in all instances. In this regard the statute simply requires that he keep an account and a statement, and on final partition account to the heirs of the deceased spouse for their net interest in the property. In spite of this, we think that the pertinent statutes contemplate that the heirs of the deceased spouse have a right to stand on the property received by the qualified survivor and demand that it be accounted for. We think further that such statutes contemplate that when such property is sold, and the proceeds invested in other property, no duty or obligation rests on the heirs of the deceased to follow the newly acquired property, but, to the contrary in such instances such heirs have a right to stand on the bond and regard it as the estate. Of course, if there is no duty to follow the property acquired from the proceed of the property of the community estate, there can be no duty to be concerned in how the newly acquired property is managed, or what becomes of it.                    ,

■ From all that has been said, it is evident that we hold that, under the facts reflected by this record, G. B. Hutchins and

those bound as sureties on his bond are, as a matter of law, liable to the plaintiffs for one-half the value of the properties of this estate with legal interest from the date of demand, which is the date of the filing of this suit. It is provided by Article 3670 that the survivor, on final partition, shall account to the heirs of the deceased spouse for their interest in the estate with "increase and profit." It strikes us that if we compel Hutchins and his sureties to account for the value of one-half of this estate with legal interest from the date of demand, we have, in legal effect, charged him with one-half the value of the estate plus "increase and profits." While the statute just mentioned charges the survivor with "increase and profits," it also credits him with "all community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission for the management of the same." It appears that Hutchins performed services in collecting the notes of this estate. It also appears that we have treated this case as though Hutchins sold its landed assets. We therefore think that if Hutchins is to be charged with the value of the properties sold and moneys collected with interest, as increase and profits, he should be credited with reasonable commissions for management, which include a reasonable commission for making sales and collections.

We agree with the Court of Civil Appeals as to the date from which interest should run, and also as to the liability of the two corporations here involved. In regard to these matters, we adopt the following from such opinion (111 S. W. (2d) 292:

"The defendants (appellants here) complain of the judgment for interest at 6 per cent from October 18, 1928, on the value of the heirs' interest in the estate. Certainly, in so far as the judgment is based upon the administrator's failure to account, there is error. The heirs could not compel an accounting until twelve months after the qualification of the survivor. Art. 3681. No demand is shown prior to the bringing of this suit. We think interest on the value of the heirs' interest in the estate after deduction of community debts, to-wit, $6873, could not be changed prior to the demand evidence by filing of this suit on the 8th day of December, 1934. 33 C. J. sec. 123, pp. 233-234 and sec. 130, p. 236; Lipsitz v. First Nat. Bank of Gordon (Com.), 296 S. W. 490, 491.

"The insurance company defendants are Fidelity Union Insurance Company and Commercial Casualty Insurance Company. The Fidelity Union Casualty Company signed Hutchins' bond as

surety. In 1930 Fidelity Union Casualty Company and Fidelity Union Insurance Company were consolidated and Fidelity Insurance Company took over all of the assets of Fidelity Union Casualty Company and assumed all its liabilities and agreed 'to discharge as its own all of the liabilities of Fidelity Union Casualty Company of every character whatsoever.'

"January 1, 1931, a contract was entered into between Fidelity Union Insurance Company, referred to in the contracts as 'Fidelity' and Commercial Casualty Insurance Company, therein referred to as .'Commercial.' For the sake of brevity we shall refer to said companies as they are referred to in said contract.

"In the contract it is provided: 'Commercial hereby assumes * * * all of the real net policy liability of Fidelity on the following classes of business * * * surety.'

" 'Commercial agrees to fulfill all of the obligations of "Fidelity" under the policies or contracts reinsured by virtue hereof, and to adjust all claims thereunder at its own expense, and to pay all claims thereunder as therein provided.' It provided that it was intended that 'Commercial' might act 'therein in all respects as if it had issued said policies or contract' * * 'it being the intention of this agreement that "Commercial" shall take the place of "Fidelity" as to said policies and contracts in all respects.'

"The contract provided, however, that 'Commercial' had no liability for any loss occuring prior to January 1, 1931.

"With reference to said last mentioned clause, it is our view that the community survivor's duty to account was a continuing duty and that it would continue if not from the execution of the bond, then from the expiration of the twelve months' period thereafter, until barred by limitation, unless sooner discharged by compliance with the statutes."

G. B. Hutchins did not appeal from the judgment of the trial court, but the two insurance companies so perfected their appeals as to bring up all parties to the district court judgment.

Because we think that credit should be allowed Hutchins for the commissions indicated by this opinion, the judgments of the Court of Civil Appeals and district court are both reversed, and the cause remanded to the district court for further proceedings in accordance with this opinion.

Opinion delivered November 22, 1939.

ON MOTION FOR REHEARING.

The above-mentioned and entitled cause is before the Su-

preme Court on two motions for rehearing—Motions Nos. 14282 and 14286. The first motion just mentioned was filed by the defendants in error, Tate Hutchins et al. The other motion was filed by Commercial Casualty Insurance Company, plaintiff in error.

We have read and fully considered Motion No. 14282 filed by Tate Hutchins et al., and in our opinion same should be overruled.

In Motion No. 14286 filed by Commercial Casualty Insurance Company our attention is called to an error in our original opinion with reference to some of the names of the several insurance companies involved in this record. In our original opinion it was stated:

"After the entire community estate here involved had been lost to these minor plaintiffs, and even to the qualified community survivor, in the manner above detailed, these plaintiffs, who are the minor sons of G. B. Hutchins and his deceased wife, Eula E. Hutchins, by next friend, sued G. B. Hutchins, the survivor, and the surety on his official bond, Fidelity Union Casualty Company, a corporation, to recover a money judgment for the value of their one-half interest in the community estate here involved. Commercial Casualty Company, a corporation, is also sued. As shown by the opinion of the Court of Civil Appeals, the two corporations just named were consolidated after this bond was executed and approved. The corporation last named took over all the assets of the corporation first named, and assumed all its liabilities, except no liability was assumed for any loss accruing prior to January 1, 1931."

The facts are that this suit was filed by these minor plaintiffs against their father, G. B. Hutchins, and also against Fidelity Union Insurance Company, and Commercial Casualty Insurance Company. Fidelity Union Casualty Company was not sued. Fidelity Union Casualty Company was the original company that executed G. B. Hutchins' bond as surety in August, 1928. In 1930 Fidelity Union Casualty Company and Fidelity Union Insurance Company were consolidated, and Fidelity Union Insurance Company, plaintiff in error, took over the assets of Fidelity Union Casualty Company and assumed all its liabilities. On January 1, 1931, Commercial Casualty Insurance Company, one of the defendants here, entered into a contract with Fidelity Union Insurance Company by the terms of which it assumed certain laibilities on the bond in this

suit. The opinion of the Court of Civil Appeals, which we quoted with approval in our original opinion, sets out the true facts in regard to the matters under discussion. We withdraw the above-quoted statement in our original opinion, and here now substitute therefor this opinion and the portion of the opinion of the Court of Civil Appeals which we quoted and approved in our original opinion.

This correction does not alter the result of our original holding. We still adhere to our original opinion with reference to all matters, except the corrections here made.

It is ordered that the two motions for rehearing above mentioned be, and the same are, in all things overruled.

Opinion delivered January 24, 1940.