**George GRANT et al., Appellants,**

v.

**John A. MARSHALL et ux., Appellees.**

Nó. 3193.

Court of Civil Appeals of Texas.

Waco.

Oct. 14, 1954.

Rehearing Denied Nov. 24, 1954.

R. A. Kilpatrick, Cleburne; Melvin F. Adler, Ft. Worth, for appellants.

John A. James, Jr., and Roy Anderson, Cleburne, for appellees.

HALE, Justice.

John A. Marshall and wife, Mattie Marshall, appellees herein, brought this action against appellants, George Grant, individually and as independent executor of the estate of Florence Grant, deceased, and the four adult sons and married daughters of A. J. Grant, deceased, by his wife, Florence Grant. The objects of the suit were to subject the proceeds derived from the sale of the community homestead of A. J. Grant and wife, Florence Grant, to the payment of community debts alleged to be due to appellees and to establish the claim of Mattie Marshall as an heir at law and child by adoption of A. J. Grant and Florence Grant.

The case was tried before a jury. Based upon the findings of the jury and the undisputed evidence, the trial court rendered judgment ordering the executor of the estate of Florence Grant to pay to appellees out of the funds received from the voluntary sale by the testatrix of the community homestead of herself and her deceased hus-

band the sum of (1) $3917.20 in payment of community debts owing to appellees, (2) $502.40 which Mattie Marshall is entitled to receive as an heir at law and adopted child of A. J. Grant, such sum being ⅒ of the balance derived from the sale of the community homestead after the payment of all community debts, and (3) $10 bequeathed to Mattie Marshall by the terms of the probated will of Florence Grant.

Appellants predicate their appeal upon two points of error as follows: "Point 1: The Court erred in subjecting to community debts the proceeds of sale of the community homestead by the widow and adult children, even though at her death she left no constituent member of the family. Point 2: The court erred in holding that Plaintiff was entitled to inherit from A. J. Grant, as his adopted daughter, for the reason that the attempted adoption by filing instrument acknowledged as a deed was a nullity, having been made subsequent to enactment of the law requiring a district court proceeding for a valid adoption."

The evidence shows that in 1928 A. J. Grant acquired 157 acres of land in Johnson County which became the community property of himself and his wife, Florence Grant, this tract of land being hereafter referred to as the Grant homestead. On December 28, 1951, A. J. Grant died intestate, leaving no property other than his ½ interest in the homestead, and no constituent member of his family other than his surviving widow. Under date of October 15, 1952, Florence Grant conveyed the Grant homestead, being joined in the deed of conveyance by all the heirs at law of A. J. Grant, deceased, to F. E. Gardner for a recited consideration of $13,876.20, the sum of $11,849.35 being paid in cash and the balance thereof being subject to the payment of an unpaid loan held by the Federal Land Bank of Houston and to certain delinquent taxes, the same being secured by a lien on the premises. Florence Grant died on December 4, 1952, leaving a will dated June 9, 1952, which was duly admitted to probate, reading as follows:

"This is my will and testimony. After all debts are settled I want this Estate to be equally divided with my four children Claude Eula Horace and Stella and I want Mattie Marshall to have ten dollars for her share of said Estate. Also I hereby appoint George Grant Independent Executor of this will without bond."

The evidence further shows that a part of the proceeds from the sale of the Grant homestead were used to pay off all of the community debts of A. J. Grant and Florence Grant except the indebtedness due to appellees and that, at the time of trial in the court below on October 21, 1953, the balance derived from the sale in the sum of $8,941.25 was on deposit in a Cleburne bank in the name of George Grant, the executor of the will and estate of Florence Grant.

The claims of appellees as creditors of the estate of Florence Grant are based upon a series of promissory notes executed by A. J. Grant and Florence Grant payable to appellees, and the value of nursing services rendered by Mattie Marshall in behalf of A. J. Grant and Florence Grant during the declining years and last illness of each. Although appellants contested the validity of the notes upon which the claims were based on the ground that they were without any consideration, the jury found against such contentions and further found the reasonable value of the nursing services rendered by Mattie Marshall, that A. J. Grant and Florence Grant each intended to compensate her, and that Mattie Marshall intended to be reasonably compensated, for such services. Appellants do not question the sufficiency of the evidence to sustain the findings of the jury, but they say under the first point in their brief that the trial court erred in ordering the executor of the estate of Florence Grant to pay to appellees from the funds in his possession as such executor the amount of the claims as established by appellees.

We cannot agree with the contentions urged by appellants under their

first point of error. The evidence shows that the Grant homestead was sold by Florence Grant, with the knowledge and consent of appellants and Mattie Marshall, in order to acquire funds with which to pay off and discharge all of the community debts due and owing by the community estate of herself and her deceased husband, A. J. Grant. The law is well settled, we think, that the surviving wife has the power and authority under the Constitution and statutes of this State to sell the community homestead of herself and her deceased husband in order to secure funds with which to discharge their ordinary community debts. Ladd v. Farrar, Tex., 17 S.W. 55; Morris v. Williams, Tex.Civ.App., 92 S.W.2d 541 (er. ref.); Hames v. Stroud, 51 Tex.Civ.App. 562, 112 S.W. 775 (er. ref.); Stone v. Jackson, 109 Tex. 385, 210 S.W. 953; Crawford v. Gibson, Tex.Civ.App., 203 S.W. 375 (er. ref.); Griffin v. Stanolind Oil & Gas Co., Tex.Com.App., 133 Tex. 45, 125 S.W.2d 545; Fidelity Union Ins. Co. v. Hutchins, 134 Tex. 268, 133 S.W.2d 105; Davis v. Magnolia Petroleum Co., Tex.Com. App., 134 Tex. 201, 134 S.W.2d 1042.

The cases cited in the brief of appellants, such as American Bonding Co. v. Logan, 106 Tex. 306, 166 S.W. 1132, Hoefling v. Hoefling, 106 Tex. 350, 167 S.W. 210 and Butler v. Summers, 151 Tex. 618, 253 S.W. 2d 418, did not involve the right of a surviving spouse to sell the community homestead for the purpose of paying community debts, and hence we do not think they are of controlling effect in their application to the facts of the case before us. It is significant, we believe, that the Court expressly states in the leading case of American Bonding Co. v. Logan, supra [106 Tex. 306, 166 S.W. 1134], that the certified question upon which its opinion and holding is based "involves no issue relating to * * * taxes, * * * or to the right of a surviving spouse to sell the homestead property for the purpose of paying community debts".

Since Florence Grant voluntarily sold the 157 acres of land belonging to the community estate of herself and her deceased husband for the purpose of paying their community debts, she thereby abandoned the further use of such premises as a homestead, as she had a right to do, and it is quite clear from the evidence that by reason of the infirmities of her age, she had no intention whatsoever of using any part of the proceeds derived from the sale in acquiring other property to be used and occupied by her as a home. Furthermore, even though she had not sold the community property for the purpose of paying community debts, and even though the proceeds derived therefrom might have been exempt from garnishment or attachment for any purpose while in her possession by reason of the homestead laws of this State, it is our opinion that when she died on December 4, 1952, such exemption ceased to exist, because no constituent member of the former family of herself and her deceased husband survived her. Thompson v. Kay, 124 Tex. 252, 77 S.W.2d 201; Engbrock v. Haidusek, Tex.Civ.App., 95 S.W.2d 520 (er. ref.); Chisholm v. Mills, Tex.Civ.App., 250 S.W.2d 268 (er. ref.). Therefore, we overrule appellants' first point of error.

Pertinent to appellants' second point, the evidence shows without dispute that A. J. Grant and Florence Grant took Mattie Marshall into their home within three hours after her birth, that they gave to her the name of Mattie Grant and that she was thereafter known by such name until she married John Marshall. The Grants sent Mattie to school, fed and clothed her and took care of her as they did the four children which were born of their marriage. The Grants told people in the community where they lived that they had adopted Mattie, and it was generally understood by those who knew the Grants that Mattie was their adopted daughter. Mattie lived in the home of the Grants until she married, she referred at all times to Mr. Grant as "Papa" and to Mrs. Grant as "Mama," and exhibited towards each of them that degree of affection which a daughter ordinarily bears for her natural parents. After Mattie had married and moved away from the Grant homestead, she and her husband

returned to the old home of the Grants in order to take care of them during their declining years, and remained there for about four years, nursing them during the last two years of that time in the last illness of each, while each was bedfast, as found by the jury.

The evidence further shows that on October 26, 1944, A. J. Grant and Florence Grant duly executed, acknowledged and caused to be filed for record in the Deed Records of Johnson County, a deed of adoption, whereby they adopted "Mrs. Mattie M. Marshall, wife of John A. Marshall, now of the age of 27 years, but being reared by us from three hours of age, and she knowing no other parents, our legal heir and child, hereby conferring on her all the rights and privileges, both in law and in equity, appertaining to this act of adoption, and giving her the same rights and privileges as if she had been naturally born to us." In the deed from Florence Grant to F. E. Gardner dated October 15, 1952, in which Mattie Marshall and her husband joined Florence Grant and appellants as grantors, it was recited that Mattie Marshall was the adopted daughter of A. J. Grant and Florence Grant, it having been represented to Mattie Marshall as an inducement to cause her to join in the deed of conveyance that the purpose thereof was to secure funds with which to pay off the community debts of A. J. Grant, deceased, and Florence Grant.

Appellants say the deed of adoption to which we have referred was a nullity because the legal effect of Art. 46a of Vernon's Tex.Civ.Stats. as enacted by the 42nd Legislature in 1931 was to repeal the pre-existing provisions of Title 3 of Vernon's Tex.Civ.Stats. relating to adoptions. On the other hand, appellees say the enactment was not intended to repeal and did not repeal the pre-existing statutory law of this State in so far as the same related to the adoption of an adult, and that in all events the validating act of the Legislature passed by the 45th Legislature in 1937, expressly provided that "all attempts made in good faith to effect an adoption of any child subsequent to January 1, A.D. 1919, and which failed of valid consummation through irregularities in the compliance with the then existing laws of this State, be and the same are hereby validated and made of binding force and effect."

■■ We do not deem it necessary to pass upon whether the deed of adoption executed and acknowledged by A. J. Grant and Florence Grant under date of October 26, 1944 evidenced a valid, legal adoption of Mattie Marshall, because it clearly appears to us from the undisputed evidence that appellants are in no position to assert the illegality, if any, of such adoption. The principle is well recognized in the jurisprudence of this State that "A court of equity will sustain an estoppel in pais to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child." Garcia v. Quiroz, Tex.Civ.App., 228 S.W. 2d 953, 956 (er. ref.). We think the evidence in this case clearly shows an adoption by estoppel. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. Therefore, appellants' second point of error is overruled.

Finding no reversible error in the judgment appealed from, it is affirmed.

## On Appellants' Motion for Rehearing.

■■ In their motion for rehearing, appellants say this court erred in overruling Point 1 in their brief because Florence Grant, after she had sold the community homestead for the purpose of paying community debts, had the right to refuse to pay any community debt she did not wish to pay and that she elected not to pay the

debts owing to appellees. We do not think the evidence in this case shows that Mrs. Grant did not wish the debts due to appellees to be paid, or that she elected not to pay the same. On the contrary, it appears to us from the evidence and the findings of the jury that it was her intention to pay such debts out of the funds to be derived from the sale of the community homestead. In her will, she stated that she wanted "all debts" settled before the estate was divided, and the only debts shown by this record were community debts. The evidence also shows that George Grant, as the agent of Florence Grant and of the other appellants herein, represented to Mattie Marshall as an inducement for her to join in the execution of the deed conveying the Grant homestead to F. E. Gardner, that the purpose of the deed was to secure funds with which to pay off all community debts of A. J. Grant and Florence Grant. Although this deed was dated October 15, 1952 and recited a cash consideration of $11,849.35, the undisputed evidence shows that the deed was not delivered to F. E. Gardner until a short time prior to the death of Florence Grant, and that the greater part of the cash consideration for the deed was not actually paid until after the death of Florence Grant. While the debts due and owing to appellees were "hotly contested, disputed and repudiated" by appellants, to use the language in their motion for rehearing, we cannot say that Florence Grant disputed or repudiated such debts or that she elected not to pay the same during her lifetime. Furthermore, by reason of the representations made to Mattie Marshall as an inducement for her to join in the execution of the deed of conveyance to F. E. Gardner, it is our opinion that neither Florence Grant nor any of the appellants was in any position to repudiate the debts owing to appellees at any time after the deed had been delivered to Gardner.

Appellants also say in their motion for rehearing that this court erred in overruling Point 2 in their brief because the pleadings and evidence were insufficient to show an adoption by estoppel in that there was no allegation or proof of an agreement on the part of A. J. Grant and Florence Grant to adopt Mattie Marshall. We cannot agree with this contention. All of the evidentiary facts set forth in our original opinion pertinent to appellants' second point were pleaded by appellees and we think the facts thus pleaded and proved were sufficient to establish all of the essential fact elements necessary to establish an equitable adoption by estoppel, including the element of an agreement on the part of A. J. Grant and Florence Grant to adopt. If the deed of adoption which they executed on October 26, 1944 was not sufficient to establish a legal adoption, such deed was undoubtedly sufficient to show the existence of an intention and a good faith agreement on their part to adopt Mattie Marshall.

From what has been said, it follows that appellants' motion for rehearing must be overruled, and it is accordingly so ordered.