In the Matter of the ESTATE OF D. F. JACKSON, Deceased.

No. 9254.

Court of Civil Appeals of Texas, Amarillo.

Feb. 27, 1981.

Rehearing Denied March 25, 1981.

David Cave, Spur, for appellant.

Jung & Marley, Thomas J. Brian, Crosbyton, for appellee.

COUNTISS, Justice.

The central issue in this appeal is whether appellant Marie Parker (hereafter "Mrs. Parker") is barred by the two year statute of limitations from asserting a claim against her father's estate for her share of her mother's estate. We conclude she is not and reverse and remand.

Maudie Martha Jackson and D. F. Jackson were the parents of Mrs. Parker. Maudie Martha Jackson died intestate in 1949 and was survived by her husband and eleven children. Mrs. Parker was 20 years old at that time. When Maudie Martha Jackson died, the primary community asset was 320 acres of farm land. After her death, D. F. Jackson qualified as community administrator of her estate. He continued to farm the 320 acres and raised the children. There is no evidence that he ever accounted to the children for, or distributed to them any part of, their share of their mother's estate.

In 1963 and 1964, D. F. Jackson sold the 320 acres in two parcels. After the sales, Mrs. Parker asked an attorney what her chances were of receiving her part of her mother's estate, but apparently she did not pursue the matter at that time.

D. F. Jackson died testate in 1978 and probate proceedings were duly instituted.

He left his entire estate to, and named as his executrix, a daughter other than Mrs. Parker. The primary estate assets were two certificates of deposit issued in 1977 and 1978 and appraised by the estate at $20,873.88.

Mrs. Parker filed a claim against her father's estate seeking her share of the proceeds from the sale of the land and other relief. The executrix of the estate denied the claim and specifically relied on the two year statute of limitations. Tex.Rev.Civ. Stat.Ann. art. 5526, (Vernon Supp.1980–1981). The county court transferred the case to the district court, in accordance with section 5(b) of the Probate Code, for resolution of the dispute. Tex.Prob.Code Ann. § 5(b) (Vernon 1980).[1] The district court heard evidence and denied the claim, concluding that it was barred by the statute of limitations. The trial court did not file findings of fact or conclusions of law.

Mrs. Parker appeals the denial of her claim, in accordance with section 5(e) of the Probate Code, and states by a single point of error that the trial court erred in denying the claim on the basis of the two year statute of limitations because "there was no law or evidence to support the position that limitations commenced to run when the land was sold by the community administrator." We interpret the point of error to raise two questions: (1) what events would initiate the running of the statute of limitations against Mrs. Parker's cause of action and (2) is the evidence legally sufficient to support a conclusion that the statute of limitations barred her cause of action. We will resolve the questions in the order stated.

In order to determine when Mrs. Parker's cause of action arose, we must review some of the duties and functions of a community administrator. Her father held that posi-

tion, after her mother's death, from the time of his authorization by the county judge until his own death. The statutes governing community administration in effect in 1949, when Mr. Jackson apparently became community administrator,[2] differ in some respects from the present Probate Code sections on community administration.[3] The central purpose is the same, however. They provide a relatively simple and inexpensive procedure for administering the community estate of an intestate spouse, giving the surviving spouse broad managerial powers over the property without the necessity for detailed court supervision. When Mr. Jackson was authorized as community administrator in 1949, he acquired the right ". . . to control, manage and dispose of such community property as may seem for the best interest of the estate and of suing and being sued with regard to the same . . ." without further county court action. Tex.Rev.Civ.Stat. art. 3669 (1925). See Fidelity Union Ins. Co. v. Hutchins, 133 S.W.2d at 109. Those same rights, and others, were granted under section 167, the comparable Probate Code section that became effective in 1956. The activities by Mr. Jackson pertinent to a resolution of this case occurred after the Probate Code went into effect in 1956, insofar as any dates are ascertainable from the record. We will, therefore, analyze the case under the appropriate Probate Code sections.

Despite the broad statutory grant, the community administrator's rights are not unfettered. The community administrator is entitled to administer the property for twelve months after filing a bond without distributing it to the heirs. After twelve months, however, anyone entitled to a share of the deceased's property can require a partition and distribution. Tex.Prob.Code Ann. § 175 (Vernon 1980).

1. References hereafter to the Probate Code refer to Tex.Prob.Code Ann. (Vernon 1980) unless otherwise stated.

2. See Tex.Rev.Civ.Stat. arts. 3661–3683a (1925) repealed effective January 1, 1956. See Fidelity Union Ins. Co. v. Hutchins, 134 Tex. 268, 133 S.W.2d 105 (1939), for a discussion of the pre-Probate Code statutes on community adminis-

tration. The record is not clear on the exact date of Mr. Jackson's authorization but Mrs. Parker alleges, and Mr. Jackson's estate does not dispute, that it was in June of 1949.

3. Tex.Prob.Code Ann. §§ 155–177 (Vernon 1980).

Thus, the inquiry is, under what circumstances is an heir required to demand his or her share of the deceased spouse's property from the community administrator or lose it because of the bar of the statute of limitations. Mr. Jackson's estate says Mrs. Parker was required to assert her claim, at the latest, within two years after the land was sold. Mrs. Parker says she had the right, but was not required, to assert it at any time between the expiration of twelve months after Mr. Jackson filed his bond as community administrator and the time permitted for filing claims against his estate.

Two sections of the Probate Code are controlling. Under section 167 Mr. Jackson had the broad managerial powers discussed above, including the right to sell the land. Section 167 further provides, however, that, after paying community debts outstanding at the death of the deceased spouse, the qualified community administrator may carry on as statutory trustee for the owners of the community estate, investing and reinvesting the funds of the estate and continuing the operation of community enterprises until the termination of the trust as provided in the Code. Under section 175, the community administration (and by necessity the statutory trust set out in section 167 above) may be terminated after twelve months from the filing of the community administrator's bond "... whenever termination is desired by either the survivor or the persons entitled to the share of the deceased spouse, or to any portion thereof...". A termination is not required, however, unless desired by the survivor or heirs.

■ Thus, by specific statutory authority, a community administration can continue indefinitely so long as the heirs and the community administrator are agreeable. If that occurs, the community administrator becomes a statutory trustee after payment of the debts outstanding at the death of the deceased spouse. When viewed in that context, it is apparent that the same rules are applicable that apply to any other trust. The heirs, as beneficiaries of the trust are not barred by the statute of limitations from claiming their beneficial interest in the trust until the applicable limitations period has run (1) after the trustee has done some act that shows repudiation of the trust and (2) that information is, or with reasonable diligence would be, brought to the knowledge of the beneficiary. *Cook v. Cook*, 331 S.W.2d 77, 80–81 (Tex.Civ.App.— Waco 1959, no writ); *see Knox v. Stephens*, 285 S.W.2d 883 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.). We will apply that rule in evaluating Mrs. Parker's claim.

■ The second question, then, is whether there is any evidence to support the trial court's conclusion that the statute of limitations bars Mrs. Parker's claim. In considering a legal sufficiency point we are required to consider only the evidence and inferences tending to support the finding under attack and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The plea of limitations being an affirmative defense on which Mr. Jackson's estate had the burden of proof, *Farr v. Bell*, 460 S.W.2d 431, 436 (Tex.Civ. App.-Dallas 1979, writ ref'd n. r. e.), we must determine whether there is any evidence to support the implied finding that, while acting as community administrator, Mr. Jackson committed an act constituting notice to Mrs. Parker that he was repudiating his position of trust, so that the statute of limitations would begin to run against her claim.

■ Our review of the record does not disclose such evidence. There is, in fact, very little evidence concerning Mr. Jackson's handling of the estate property. It was stipulated that he sold the 320 acres in 1963 and 1964 and Mrs. Parker testified she learned of the sales after they occurred. Two of his sons testified that, after their mother's death, their father continued to operate the farm "just like it was his" and did not consult with the children concerning the farm or ask their permission when he sold it. There are also some general statements that he used the farm as his own to the exclusion of the children and used the income from the farm to raise the children and support himself. The record does not

reveal whether the present estate assets represent the proceeds from the sale of the farm.

We observe initially that, aside from her knowledge of the sale, there is no evidence of the extent to which Mrs. Parker knew or by reasonable diligence could have known how her father was handling the estate. Of greater importance, however, is the fact that every action taken by Mr. Jackson under this record was entirely consistent with his powers as community administrator. He was empowered to control, manage and dispose of the community property and that is what he did. There is no evidence of any act by Mr. Jackson that could be reasonably construed as constituting notice to Mrs. Parker of his repudiation of his duties as community administrator or statutory trustee.[4] We conclude, therefore, that there is no evidence to support an implied finding that Mrs. Parker's claim is barred by the statute of limitations.

The judgment of the trial court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

4. We recognize that *Wingo v. Rudder*, 103 Tex. 150, 124 S.W. 899 (1910), seems to hold that a sale of the land by the community administrator is, without more, a repudiation of his relationship with the other joint owners. If that view were followed under the present Probate Code sections, however, it would either abrogate specific statutory powers given the community administrator or subject the heir to loss of an estate interest when the community administrator was doing exactly what the Probate Code permits under section 167.